ORIGINAL

# In the United States Court of Federal Claims

No. 17-307
Filed: February 28, 2018

**FILED**

**FEB 2 8 2018**

U.S. COURT OF
FEDERAL CLAIMS

```
******************************
                              *
MICHAEL HADDAD,               *
                              *
        Plaintiff, pro se,    *
                              *
v.                            *
                              *
THE UNITED STATES,            *
                              *
        Defendant,            *
                              *
and                           *
                              *
BAE SYSTEMS INFORMATION       *
SOLUTIONS, INC., NCR GOVERNMENT *
SYSTEMS, LLC, TRANS DIGITAL    *
TECHNOLOGIES, LLC and MORPHOTRUST*
USA, LLC.                     *
                              *
        Third-Party Defendants. *
                              *
******************************
```

Assignment of Claims Act of 1940,
   31 U.S.C. § 3727;
Federal Rules of Evidence 901
   (Authenticating or Identifying
   Evidence), 902 (Evidence That Is Self-
   Authenticating);
28 U.S.C. § 1498(a) (Waiver of Sovereign
   Immunity And Jurisdiction Re: Patent
   Infringement Claims).

**Michael Haddad**, Gaithersburg, Maryland, *pro se*.

**David A. Foley, Jr.**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

**Scott A. Felder**, Wiley Rein, LLP, Washington, D.C., Counsel for Third-Party Defendant, BAE Systems Information Solutions, Inc.

**Richard L. Brophy**, Armstrong Teasdale, LLP, St. Louis, Missouri, Counsel for Third-Party Defendants, Trans Digital Technologies, LLC and MorphoTrust USA, LLC.

**Christina E. Fahmy**, Kilpatrick Townsend & Stockton, LLP, Washington, D.C., Counsel for Third-Party Defendant, NCR Government Systems, LLC.

mr. Haddad
7016 3010 0000 4308 4188

7016 3010 0000 4308 4195
mr. Felder

7016 3010 0000 4308 4201
mr. Brophy

7016 3010 0000 4308 4218
mrs. Fahmy

## MEMORANDUM OPINION AND ORDER GRANTING THE GOVERNMENT'S MOTION FOR PARTIAL DISMISSAL

**BRADEN**, *Chief Judge.*

## I.    RELEVANT FACTUAL BACKGROUND.[1]

On August 27, 2007, Michael Haddad ("Plaintiff") filed a patent application, Application No. 11/895,656 (the "'656 Application"), entitled "Airport Vehicular Gate Entry Access System" with the United States Patent and Trademark Office (the "USPTO"). Compl. ¶ 9; *see also* Compl. Ex. 2. The '656 Application was granted by the USPTO on December 29, 2009, and assigned United States Patent No. 7,639,844 (the "'844 Patent"). Compl. ¶ 10; *see also* Compl. Ex. 2. Plaintiff was the sole inventor listed on the '844 Patent. Compl. ¶ 10; *see also* Compl. Ex. 2.

In June 2009, the Transportation Security Administration (the "TSA") issued a solicitation (the "2009 Solicitation") for a Credential Authentication Technology-Boarding Pass Scanning System ("CAT/BPSS"). Compl. ¶ 13. Astornet Technologies, Inc. ("Astornet"), a "corporation . . . established" by Plaintiff and of which Plaintiff is the "CEO/President," 7/18/17 Pl. Resp. Ex. C, submitted a proposal and was "selected for testing and advanced to the next stage of the process." Compl. ¶ 13. "At that stage, the TSA required all CAT/BPSS bidders to provide 5 systems in kiosks at a demonstration facility, free of charge." Compl. ¶ 13. Astornet's participation in the demonstration required "an outlay of nearly $1,000,000 in finished systems and support, with no commitment from the TSA." Compl. ¶¶ 13–14. Nevertheless, Astornet "attempted to participate in the demonstration with 5 systems in parts[.]" Compl. ¶¶ 13–14.

On September 30, 2011, the TSA awarded BAE System Information Solutions, Inc. ("BAE"), NCR Government Systems, LLC ("NCR"), and Trans Digital Technologies, Inc.

---

[1] The relevant facts herein were derived from: the March 6, 2017 Complaint ("Compl.") and attached exhibits ("Compl. Ex. A, 1–7") (ECF No. 1); exhibits attached to the Government's April 20, 2017 Motion For Notices To Third Parties ("4/20/17 Gov't Mot. Ex. A–A-4") (ECF No. 8); a June 29, 2017 Declaration of James Johnson ("6/29/17 Dec.") (ECF No. 20); and exhibits attached to Plaintiff's July 18, 2017 "Reply To Defendant'[s] Motion For Partial Dismissal" ("7/18/17 Pl. Resp. Ex. A–G") (ECF No. 27). *See Moyer v. United States*, 190 F.3d 1314, 1318 (Fed. Cir. 1999) ("Fact-finding is proper when considering a motion to dismiss where the jurisdictional facts in the complaint . . . are challenged."); *see also Ferreiro v. United States*, 350 F.3d 1318, 1324 (Fed. Cir. 2003) (the court "may weigh relevant evidence when it considers a motion to dismiss that challenges the truth of jurisdictional facts alleged in a complaint").

Relevant facts were also derived from: an exhibit attached to Plaintiff's August 23, 2016 "Brief In Support Of Court Decision Of July 14, 2016" ("8/23/16 Pl. Brief Ex. I"), filed with the court in *Haddad v. United States*, 128 Fed. Cl. 373 (Fed. Cl. 2016); and Astornet Technologies, Inc.'s January 27, 2014 Complaint, filed with the United States District Court for the District of Maryland in *Astornet Techs., Inc. v. BAE Sys., Inc.*, No. 14-cv-00245, 2014 WL 10919516 (D. Md. 2014). *See Los Angeles Biomedical Research Inst. at Harbor–UCLA Med. Ctr. v. Eli Lilly & Co.*, 849 F.3d 1049, 1061 n.6 (Fed. Cir. 2017) ("We can properly take judicial notice of the records of related court proceedings."); *see also Ferreiro*, 350 F.3d at 1324.

("TDT")[2] Indefinite Delivery Indefinite Quality ("IDIQ") contracts, HSTS04-11-D-CT2111, HSTS04-11-D-CT2113, and HSTS04-11-D-CT2114, respectively (the "2011 TSA Contracts"). Compl. ¶ 14; *see also* Compl. Ex. 4. "The maximum amount for all orders established under [each] contract [was] $79,000,000." Compl. Ex. 4.

In June 2012, however, the TSA "decided to delay procurement of [the] CAT/BPSS" and canceled the 2011 TSA Contracts. Compl. ¶ 17; *see also* Compl. Ex. 6.

On December 13, 2013, the TSA issued a new solicitation (the "2013 Solicitation") seeking "proposals for a slightly revised CAT/BPSS[.]" Compl. ¶ 18; 4/20/17 Gov't Mot. Ex. A-4. "[P]roposals were due on January 21, 2014." Compl. ¶ 18; *see also* 4/20/17 Gov't Mot. Ex. A-4.

In January 2014,[3] Plaintiff signed a letter dated May 1, 2009 (the "Licensing Letter"), that "appoint[ed] Astornet . . . as the exclusive licensee to pursue TSA opportunity [sic] for the CAT/BPSS." 7/18/17 Pl. Resp. Ex. A. The Licensing Letter "entitled [Astornet] to submit [a] CAT/BPSS proposal, manufacture and sell ['844 P]atent . . . protected equipment, and legally pursue infringers of the ['844 P]atent in relation to the CAT/BPSS opportunity." 7/18/17 Pl. Resp. Ex. A.

On January 27, 2014, Astornet filed a lawsuit for infringement of the '844 Patent against BAE, NCR, and MorphoTrust in the United States District Court for the District of Maryland. Complaint, *Astornet Techs.*, 2014 WL 10919516 (D. Md. 2014) (No. 14-cv-00245). The January 27, 2014 Complaint alleged that Astornet was the "sole exclusive licensee of, and owns all right, title, and interest to litigate in this matter . . . the '844 Patent." Complaint ¶ 1, *Astornet Techs.*, 2014 WL 10919516 (No. 14-cv-00245). The January 27, 2014 Complaint also alleged that "BAE,

---

[2] "[T]hrough a series of transactions, [TDT] is now associated with MorphoTrust USA, Inc." ("MorphoTrust"). 4/20/17 Gov't Mot. at 1, n.1.

[3] Initially, Plaintiff did not represent that he signed the Licensing Letter in 2014. Instead, Plaintiff stated that the Licensing Letter "was provided to Astornet *on 5/1/2009*." 7/18/17 Pl. Resp. at 4 (emphasis added); *see also* 7/18/17 Pl. Resp. at 1 ("the letter was dated *on* May 1, 2009" (emphasis added)); 7/18/17 Pl. Resp. Ex. C ("the exclusive license of [the '844] Patent . . . *took place on* May 1st, 2009" (emphasis added)). But, after the court directed Plaintiff to explain inconsistencies between this date, *i.e.*, May 1, 2009, and the text of the Licensing Letter, Plaintiff represented to the court that the Licensing Letter was "signed in 2014, and predated to a period when [the TSA] issued the [2009 S]olicitation," so that a lawsuit could be filed against BAE, NCR, and MorphoTrust. 10/11/17 Pl. Reply at 3.
Although Plaintiff's briefs are not clear regarding the precise date when Plaintiff purportedly signed the Licensing Letter, Plaintiff asserts that it was "signed in 2014 . . . to allow [Astornet's counsel, Geoffrey] Mason[,] to file a District [Court] case against the 3 infringers[.]" 10/11/17 Pl. Reply at 3. That lawsuit was filed on January 27, 2014. Complaint, Astornet Techs., Inc. v. BAE Sys., Inc., 2014 WL 10919516 (D. Md. 2014) (No. 14-cv-00245). Accordingly, if the Licensing Letter was signed in 2014, Plaintiff must have signed it prior to January 27, 2014, the date the district court case was filed.

NCR and MorphoTrust's original and revised CAT/BPSS . . . infringe Astornet's '844 patent."[4] Complaint ¶ 20, *Astornet Techs.*, 2014 WL 10919516 (No. 14-cv-00245).

On February 1, 2014, Plaintiff signed another letter dated February 1, 2014 (the "Assignment Letter") stating that "to effectively pursue [the] '844 [P]atent infringers BAE . . . , NCR . . . [,] and MorphoTrust . . . , [Plaintiff], . . . Title Holder [of the '844 Patent] agrees to assign Astornet . . . the exclusive rights in [the] '844 [Patent] to litigate the CAT/BPSS matter against [the] above[-]mentioned companies, in the United States Federal Court." 8/23/16 Pl. Brief Ex. I.

On April 11, 2014, the TSA awarded MorphoTrust a new IDIQ contract, HSTS04-14-D-CT2002 (the "2014 TSA Contract"). Compl. ¶ 18; 4/20/17 Gov't Mot. Ex. A-4. "The maximum amount of all orders placed under this contract [was] $85,000,000." 4/20/17 Gov't Mot. Ex. A-4. Between April 11, 2014 and October 26, 2016, the TSA "ordered . . . and took delivery of 17 CAT[/BPSS] units" under the 2014 TSA Contract. 6/29/17 Dec. at A004.

On October 27, 2016, Astornet executed a "RETURN OF EXCLUSIVE RIGHTS" dated October 27, 2016 (the "Return Agreement") to "return . . . all rights assigned to and/or acquired by Astornet in any form, in and to the ['844] Patent, including the right to enforce the ['844 P]atent and to collect for any and all past damages[.]" Compl. Ex. A. The Return Agreement also stated that "Astornet . . . assigns, any and all right, title and interest in and to the ['844 P]atent which may have at any time been held by Astornet, including the right to enforce the ['844 P]atent and to collect for past damages." Compl. Ex. A.

## II.   PROCEDURAL HISTORY.

On March 6, 2017, Plaintiff filed a Complaint in the United States Court of Federal Claims ("Compl.") (ECF No. 1), alleging that the TSA infringed the '844 Patent. Compl. ¶ 33. On March 13, 2017, this case was reassigned to the undersigned judge. ECF No. 4.

On April 20, 2017, the Government filed a Motion For Enlargement Of Time To Respond To Plaintiff's Complaint ("Motion For Enlargement"), requesting until June 30, 2017 to "answer or otherwise respond to the [March 6, 2017 C]omplaint filed by [P]laintiff." ECF No. 7 at 1. On that same day, the Government also filed a Motion For Notices To Third Parties, *i.e.*, BAE, NCR, TDT, and MorphoTrust. ECF No. 8.

On May 3, 2017, the court granted the Government's April 20, 2017 Motion For Notices To Third Parties and directed the Clerk of Court to issue notices to BAE, NCR, TDT, and MorphoTrust. ECF No. 10. On that same day, the Clerk of Court issued those notices. ECF No. 11.

---

[4] Astornet's January 27, 2014 Complaint alleged that the "revised" CAT/BPSS units were those contemplated by the TSA's 2013 Solicitation. Complaint ¶ 19, *Astornet Techs.*, 2014 WL 10919516 (No. 14-cv-00245).

On May 10, 2017, Plaintiff filed a "Brief In Reply To Defendant['s] Motion For Enlargement Of Time To Respond To Complaint," requesting that the court deny the Government's April 20, 2017 Motion For Enlargement. ECF No. 12.

On May 15, 2017, the court granted the Government's April 20, 2017 Motion For Enlargement and directed the Government to "file an answer or otherwise responsive pleading on, or before, June 30, 2017."[5] ECF No. 13 at 2.

On June 27, 2017, NCR filed an Answer. ECF No. 16. On that same day, BAE also filed an Answer. ECF No. 18.

On July 5, 2017, the Government filed a Motion For Partial Dismissal ("7/5/17 Gov't Mot."), pursuant to Rules of the United States Court of Federal Claims ("RCFC") 12(b)(1) and 12(b)(6). ECF No. 20. Therein, the Government asserted that

> [a]lthough [Plaintiff] contends that he *now* holds all substantial rights in the '844 Patent, the [March 6, 2017] Complaint indicates that these rights were not assigned back to [Plaintiff] by Astornet until October 27, 2016. The [March 6, 2017] Complaint is silent regarding when these rights were originally assigned to Astornet by [Plaintiff].

7/5/17 Gov't Mot. at 5 (emphasis in original).

On July 5, 2017, TDT and MorphoTrust filed an Answer. ECF No. 21. On that same day, BAE filed an Amended Answer. ECF No. 24. On July 11, 2017, TDT and MorphoTrust also filed an Amended Answer. ECF No. 25.

On July 18, 2017, Plaintiff filed a "Reply To Defendant'[s] Motion For Partial Dismissal" ("7/18/17 Pl. Resp."). ECF No. 27. Thereto was attached the Licensing Letter, wherein Plaintiff is referred to as the "Owner of patent US7,639,844." 7/18/17 Pl. Resp. Ex. A. In addition, an Exhibit C was attached that was a signed and notarized statement dated July 10, 2017 (the "Notarized Statement"), executed by Plaintiff, in his personal capacity and in his capacity as the "CEO/President" of Astornet, representing that "the exclusive license of [the '844] Patent . . . assigned from . . . [Plaintiff], the inventor and owner of the ['844 P]atent to Astornet . . . took place on May 1st, 2009[.]" 7/18/17 Pl. Resp. Ex. C. The Notarized Statement also represented that "[Plaintiff] certif[ies] that[,] as per the record, that he signed a letter dated 5/1/2009 granting Astornet . . . a license[.]" 7/18/17 Pl. Resp. Ex. C.

On August 4, 2017, the Government filed a Reply In Support Of Its Motion For Partial Dismissal ("8/4/17 Gov't Reply") (ECF No. 28), arguing that, "based on the documents provided by [P]laintiff, as of May 1, 2009, [Plaintiff] no longer had a right to sue for infringement of the '844 [P]atent as it relates to CAT/BPSS[.]" 8/4/17 Gov't Reply at 2. "Thus, [Plaintiff] cannot

---

[5] On May 24, 2017, the TSA "ordered 30 CAT[/BPSS] units" under the 2014 TSA Contract. 6/29/17 Dec. at A004. The TSA "expect[ed] to begin taking delivery of these units on or about July 17, 2017." 6/29/17 Dec. at A004.

raise any claims that arose between May 1, 2009 and October 27, 2016 that fall within the scope of the assignment of rights to Astornet." 8/4/17 Gov't Reply at 2.

On August 15, 2017, Plaintiff filed a Sur-Reply ("8/15/17 Pl. Sur-Reply").[6] ECF No. 29. On August 22, 2017, the Government also filed a Sur-Reply ("8/22/17 Gov't Sur-Reply"). ECF No. 30.

On September 22, 2017, the court issued a Memorandum Opinion And Show Cause Order (ECF No. 31), stating:

> The USPTO . . . assigns patent numbers "after the issue fee has been paid."[7] The issue fee for the '844 Patent was paid on November 9, 2009.[8] Therefore, Plaintiff could not have known the patent number of the '844 Patent, *i.e.*, 7,639,844, prior to November 9, 2009. As such, the [Licensing] Letter's designation of Plaintiff as the "Owner of patent US7,639,844" is facially inconsistent, *i.e.*, the [Licensing] Letter is dated May 1, 2009, more than six months before the '844 Patent would have been assigned its patent number.
>
> For these reasons, Plaintiff is ordered to file a response on, or before, October 20, 2017, explaining how Plaintiff knew the patent number of the '844 Patent on May 1, 2009, the date of the [Licensing] Letter. If a response is not filed by that time, the court will dismiss the above-captioned case, pursuant to RCFC 41(b), with prejudice.

ECF No. 31 at 2.

On October 11, 2017, Plaintiff filed a Reply ("10/11/17 Pl. Reply") (ECF No. 32), stating that "[o]n May 1, 2009, the date of the [Licensing] Letter, Plaintiff evidently did not know the patent number, nor knew the patent date of issue." 10/11/17 Pl. Reply at 1. Plaintiff stated also that "the [c]ourt [M]emorandum is correct. Plaintiff did affirm the date of the [Licensing L]etter[.] . . . But[,] Plaintiff never affirmed . . . that he signed a letter **ON** 5/1/2009,

---

[6] Plaintiff's August 22, 2017 Sur-Reply was entitled "Reply To Defendant'[s] Motion For Partial Dismissal In Support Of Plaintiff['s] Motion To Dismiss Defendant['s] Partial Dismissal Motion."

[7] *See Patent Process Overview*, UNITED STATES PATENT AND TRADEMARK OFFICE, https://www.uspto.gov/patents-getting-started/patent-process-overview#step7 (last visited Feb. 15, 2018) ("The notice of allowance will list the issue fee and may also include the publication fee that must be paid prior to the Patent being issued. . . . A patent number and issue date will be assigned to an application and an Issue Notification will be mailed after the issue fee has been paid and processed by the USPTO.").

[8] *See* "Issue Fee Payment (PTO-85B),"dated November 9, 2009, within the "Image File Wrapper" of the '844 Patent, UNITED STATES PATENT AND TRADEMARK OFFICE: PATENT APPLICATION INFORMATION RETRIEVAL, https://portal.uspto.gov/pair/PublicPair (select "Patent Number" and search "7639844"; then select "Image File Wrapper").

but specifically signed a letter dated 5/1/2009." 10/11/17 Pl. Reply at 2 (emphasis in original). In sum, the [Licensing L]etter was prepared by [Mr.] Mason, . . . in 2014. It was signed in 2014, and predated to the period when [the TSA] issued the [2009 S]olicitation[.]" 10/11/17 Pl. Reply 3.

On October 16, 2017, the parties were requested to advise the court whether they intended to file supplemental motions or briefs, in light of the court's September 22, 2017 Memorandum Opinion And Show Cause Order and Plaintiff's October 11, 2017 Reply.

On October 17, 2017, the court issued a Scheduling Order. ECF No. 33.

On October 27, 2017, the Government filed a Supplemental Brief In Support Of The July 5, 2017 Motion For Partial Dismissal ("10/27/17 Gov't Supp. Br."). ECF No. 34.

On November 6, 2017, Plaintiff filed a Reply To Defendant's Supplemental Brief ("11/6/17 Pl. Supp. Br."). ECF No. 35.

## III.   DISCUSSION.

### A.   Jurisdiction.

As a threshold matter, the court must consider jurisdiction before reaching the substantive merits of a case. *See Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented."). The burden of establishing jurisdiction "lies with the party seeking to invoke the court's jurisdiction." *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993).

The United States Court of Federal Claims has jurisdiction to adjudicate claims that allege "an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, . . . [seeking] recovery of . . . reasonable and entire compensation for such use and manufacture." 28 U.S.C. § 1498(a).

If a motion to dismiss for lack of subject-matter jurisdiction "simply challenges the court's subject matter jurisdiction based on the sufficiency of the pleading's allegations . . . then those allegations are taken as true and construed in a light most favorable to the complainant." *Cedars-Sinai Med. Ctr.*, 11 F.3d at 1583. But, if such a motion "denies or controverts the pleader's allegations of jurisdiction, . . . the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction." *Id.* "In such a case, the allegations in the complaint are not controlling and only uncontroverted factual allegations are accepted as true for purposes of the motion. All other facts underlying the controverted jurisdictional allegations are in dispute and are subject to fact-finding by the . . . court." *Id.* at 1583–84 (internal citations omitted); *see also Moyer*, 190 F.3d at 1318 ("Fact-finding is proper when considering a motion to dismiss where the jurisdictional facts in the complaint . . . are challenged."). The court "may weigh relevant evidence when it considers a motion to dismiss that challenges the truth of jurisdictional facts alleged in a complaint." *Ferreiro*, 350 F.3d at 1324; *see also Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988) ("If a motion to dismiss for lack of subject matter jurisdiction . . . challenges the truth of the jurisdictional facts alleged in the complaint, the [trial]

court may consider relevant evidence in order to resolve the factual dispute."); JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 12.30[4] (3d ed. 2012) ("[W]hen a court reviews a complaint under a factual attack, the allegations have no presumptive truthfulness, and the court . . . has discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts.").

If the court determines that it does not have subject-matter jurisdiction, the court must dismiss the complaint. *See* RCFC 12(h)(3).

**B.    Whether The Court Has Jurisdiction To Adjudicate Claims Alleged In The March 6, 2017 Complaint Arising Prior To October 27, 2016.**

**1.    The Government's Argument.**

The Government argues that the court "lacks jurisdiction to adjudicate [Plaintiff's] claims based on equipment delivered . . . while [Plaintiff] did not hold all substantial rights in the '844 Patent." 7/5/17 Gov't Mot. at 3. This is because, "[u]nder 'settled principles of sovereign immunity,' the United States cannot be sued[,] except by its consent, and the terms of such consent limit the [c]ourt's jurisdiction." 7/5/17 Gov't Mot. at 4 (quoting *United States v. Dalm*, 494 U.S. 596, 608 (1990) ("Under settled principles of sovereign immunity, the United States, as sovereign, is immune from suit, save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." (internal quotation marks omitted)).

The March 6, 2017 Complaint alleges that CAT/BPSS equipment procured by the TSA under the 2011 TSA Contracts and the 2014 TSA Contract infringed one or more claims of the '844 Patent. 7/5/17 Gov't Mot. at 5 (citing Compl. ¶¶ 1, 3, 13, 15–33). The 2011 TSA Contracts were issued on September 30, 2011 and the 2014 TSA Contract was issued on April 11, 2014. 7/5/17 Gov't Mot. at 5. Although Plaintiff "contends that he *now* holds all substantial rights in the '844 Patent, . . . these rights were not assigned back to [Plaintiff] by Astornet until October 27, 2016." 7/5/17 Gov't Mot. at 5 (emphasis in original) (citing Compl. ¶¶ 5, 6). Interestingly, the March 6, 2017 Complaint is "silent regarding when these rights were originally assigned to Astornet by [Plaintiff]."[9] 7/5/17 Gov't Mot. at 5 (citing Compl. ¶¶ 5, 6). "[A] complaint filed in United States District Court by Astornet on January 27, 2014[, however,] averred that at that time Astornet was 'the sole exclusive licensee of, and owns all right, title, and interest to litigate in this matter . . . [the '844 Patent]." 7/5/17 Gov't Mot. at 6 (quoting Complaint ¶ 1, *Astornet Techs.*, 2014 WL 10919516 (No. 14-cv-00245)). "Thus, at some point between the August 27, 2007 filing of the ['656 A]pplication that issued as the '844 Patent and January 27, 2014, when Astornet filed its district court patent infringement suit averring it had all substantial rights in the '844 Patent, [Plaintiff] must have assigned all substantial rights in the '844 Patent to Astornet." 7/5/17 Gov't Mot. at 6.

The Assignment of Claims Act, 31 U.S.C. § 3727, is "construed as a limitation on the scope of the waiver of sovereign immunity," and thus limits the court's jurisdiction. 7/5/17 Gov't Mot.

---

[9] Plaintiff did not proffer the Licensing Letter prior to the Government filing the July 5, 2017 Motion For Partial Dismissal.

at 3 (citing *Ins. Co. of the West v. United States*, 243 F.3d 1367, 1375 (Fed. Cir. 2001) ("We conclude that the Tucker Act must be read to waive sovereign immunity for assignees as well as those holding the original claim, except as barred by a statutory provision such as the [Assignment of Claims Act].")). The Assignment of Claims Act "provides that '[a]n assignment may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued." 7/5/17 Gov't Mot. at 7 (quoting 31 U.S.C. § 3727(b)). For these purposes, "an 'assignment' is '[(1)] a transfer or assignment of any part of a claim against the United States Government or of an interest in the claim; or (2) the authorization to receive payment for any part of the claim.'" 7/5/17 Gov't Mot. at 7 (quoting 31 U.S.C. § 3727(a)). Therefore, the Assignment of Claims Act "bars the assignment of past damages in Section 1498 cases." 7/5/17 Gov't Mot. at 7 (citing *Foster v. United States*, 230 Ct. Cl. 938, 939–40 (Ct. Cl. 1982) ("[T]he case law clearly establishes the applicability of [the Assignment of Claims Act] to prevent assignment of patent claims on patents issued subsequent to 1918.")). As such, Plaintiff cannot recover for any alleged infringement that occurred "between the date he assigned all substantial rights in the '844 Patent to Astornet—January 27, 2014 at the least—and when Astornet returned those rights to [Plaintiff]—October 27, 2016." 7/5/17 Gov't Mot. at 8.

In this case, between April 11, 2014 and October 26, 2016, the TSA "ordered and took delivery of 17 [CAT/BPSS units[,]" pursuant to the 2014 TSA Contract. 7/5/17 Gov't Mot. at 8. Delivery of those devices occurred between April 11, 2014 and October 26, 2016, and thus "claims related to these devices arose while Astornet held all substantial rights in the '844 Patent." 7/5/17 Gov't Mot. at 8. Therefore, since the Assignment of Claims Act is "a limitation on this [c]ourt's jurisdiction, claims based on the 17 [CAT/BPSS] units delivered between April 11, 2014 and October 26, 2016 under the 2014 [TSA C]ontract[,] must be dismissed under RCFC 12(b)(1)." 7/5/17 Gov't Mot. at 8–9.

Finally, because Plaintiff "has failed to plead that he had all substantial rights in the '844 Patent when [the] equipment was delivered to [the] TSA under the 2011 [TSA C]ontracts," the allegations in the March 6, 2017 Complaint, based on the 2011 TSA Contracts, should also be dismissed under RCFC 12(b)(1). 7/5/17 Gov't Mot. at 10.

### 2. Plaintiff's Response.

Plaintiff responds, by producing the Licensing Letter, purporting to "appoint[] Astornet . . . as the exclusive licensee to pursue TSA opportunity [sic] for the CAT/BPSS." 7/18/17 Pl. Resp. Ex. A. Plaintiff contends that these "new facts contradict all allegations by [the Government] concerning substantial assignments of rights to Astornet," because the Licensing Letter "provides a specific license for a specific product. Such product is CAT/BPSS. The letter is also clear to what exactly is the duty of Astornet during the exclusive licensing. Such duties were limited to . . . CAT/BPSS[.]" 7/18/17 Pl. Resp. at 3. In other words, "the [L]icensing [L]etter provided to Astornet on 5/1/2009 specifically cited TSA product 'CAT/BPSS[.]' That means that all other product[s] were excluded from [the] Astornet license and specifically the product 'CAT[,]'" contemplated by the TSA's 2013 Solicitation and the 2014 TSA Contract. 7/18/17 Pl. Resp. at 4. Accordingly, "Plaintiff recognizes that all products delivered as CAT/BPSS and part of the [2009 S]olicitation could be subject to Dismissal. Nevertheless, all products delivered in the [2013 S]olicitation should not be dismissed as not being part of Astornet['s] license rights. All [the Government's] allegations otherwise have no legal basis." 7/18/17 Pl. Resp. at 5.

9

### 3.   The Government's Reply.

The Government replies that, based on the Licensing Letter, as of May 1, 2009, Plaintiff "no longer had a right to sue for infringement of the '844 [P]atent[,] as it relates to CAT/BPSS[,] . . . that right was assigned to Astornet." 8/4/17 Gov't Reply at 2. Consequently, Plaintiff "cannot raise any claims that arose between May 1, 2009 and October 27, 2016 that fall within the scope of assignment of rights to Astornet." 8/4/17 Gov't Reply at 2.

Plaintiff "does not dispute that the 2011 [TSA C]ontracts were for the procurement of CAT/BPSS[, and] . . . based on the allegations in the [March 6, 2017] Complaint, all purchases under the 2011 [TSA C]ontracts must have occurred between the date of the contract awards in 2011 and 2014, when a replacement contract was awarded." 8/4/17 Gov't Reply at 2. Therefore, "all alleged claims based on the 2011 [TSA C]ontracts necessarily arose between 2011 and 2014. [And, b]ecause this falls within the window of time when Astornet was the exclusive licensee for the '844 [P]atent, [P]laintiff's claims are barred by the Assignment of Claims Act." 8/4/17 Gov't Reply at 2.

Moreover, Plaintiff's "attempts to construe the assignment to Astornet narrowly to exclude claims that allegedly arose under the 2014 [TSA C]ontract are not persuasive." 8/4/17 Gov't Reply at 3. First, Plaintiff argues that the "solicitation for the 2014 [TSA C]ontract sought . . . [CAT] systems and those systems are distinct from the 'CAT/BPSS' . . . referenced in the exclusive license." 8/4/17 Gov't Reply at 3. This contradicts allegations in the March 6, 2017 Complaint that "the 2014 [TSA C]ontract was for a 'slightly revised *CAT/BPSS* . . . ,' not for a distinct 'CAT' system." 8/4/17 Gov't Reply at 3 (quoting Compl. ¶¶ 17–18) (emphasis in original). Second, "Astornet's attempts to enforce the '844 patent in district court make clear that claims based on the 2014 [TSA C]ontract were within the scope of [Plaintiff's] assignment to Astornet," because the "district court lawsuit against government contractors sued not only for infringement[,] based on systems provided under the 2011 [TSA C]ontracts, but also for systems to be provided under the [2013 S]olicitation." 8/4/17 Gov't Reply at 3 (citing Complaint ¶¶ 19–20, *Astornet Techs.*, 2014 WL 10919516 (No. 14-cv-00245)). Therefore, "in view of the plain language of the [March 6, 2017] Complaint and Astornet's performance under the exclusive license, it is clear that the assignment to Astornet included claims based on the 2014 [TSA C]ontract, and [Plaintiff's] *post hoc* litigation-driven arguments to the contrary fail." 8/4/17 Gov't Reply at 4.

### 4.   Plaintiff's Sur-Reply.

Plaintiff adds that "[t]he fact that the damages happened in the past while Astornet had exclusive rights to pursue legally, on behalf of Plaintiff, is irrelevant because Plaintiff at all time remained the sole owner of the ['844 P]atent[.]" 8/15/17 Pl. Sur-Reply at 2. "Ultimately, damages happened to Plaintiff, regardless of who had rights. The damages that could have been awarded to Astornet, were destined to be paid back to [Plaintiff]." 8/15/17 Pl. Sur-Reply at 2.

### 5.   The Government's Sur-Reply.

The Government adds that, Plaintiff "acknowledge[s] that at least some of the claims raised in the [March 6, 2017 C]omplaint arose while Astornet . . . had exclusive rights to sue for [patent]

infringement." 8/22/17 Gov't Sur-Reply at 2. And, "[b]ecause these claims cannot be assigned from Astornet to [P]laintiff[,] . . . [P]laintiff's arguments fail." 8/22/17 Gov't Sur-Reply at 2.

### 6.    The Government's Supplemental Brief.

The Government adds that, although "[P]laintiff attempts to avoid dismissal, [Plaintiff's] backdating-narrative directly conflicts with [P]laintiff's previous statements regarding the timing of the assignment." 10/27/17 Gov't Supp. Br. at 1. Although Plaintiff attempts to explain the discrepancies identified by the court in the September 22, 2017 Memorandum Opinion And Show Cause Order, "[P]laintiff's backdating-narrative is clearly an attempt to avoid addressing concerns regarding [P]laintiff's misrepresentations to the [c]ourt and dismissal of the action." 10/27/17 Gov't Supp. Br. at 4.

In any event, "[e]ven if [P]laintiff's response is sufficient to satisfy the [c]ourt's order to show cause, the [G]overnment's motion should be granted[, b]ecause . . . the [G]overnment still does not know when [Plaintiff] assigned substantially all rights to the ['844 P]atent to Astornet." 10/27/17 Gov't Supp. Br. at 4. Instead, "[P]laintiff initially indicated that the assignment actually occurred on May 1, 2009, and later indicated that the assignment occurred sometime in 2014, and was backdated to May 1, 2009." 10/27/17 Gov't Supp. Br. at 4. Accordingly, "[P]laintiff has failed to demonstrate he had all substantial rights in the ['844 P]atent at the time the claims based on the 2011 [TSA C]ontracts arose." 10/27/17 Gov't Supp. Br. at 4–5.

### 7.    Plaintiff's Supplemental Brief.

Plaintiff responds that, "[t]he fact that the [Licensing L]etter included the patent number proves that the letter was not signed on 5/1/2009 but, as certified before, the letter was signed in 2014, and [was] predated to [May 1, 2009] . . . , to allow Mr. Mason to file a District case against the three infringers[.]" 11/6/17 Pl. Supp. Br. at 2. Although the Government continues "pushing irrelevant facts in its effort to prevail in the infringement act[,] . . . [the Government] is ignoring . . . [the N]otarized [S]tatement canceling my . . . assignment which took place before the current filing[.]" 11/6/17 Pl. Supp. Br. at 2–3.

### 8.    The Court's Resolution.

#### a.    Governing Precedent.

"Jurisdiction is a threshold issue . . . and a court must satisfy itself that it has jurisdiction to hear and decide a case before proceeding to the merits." *PIN/NIP, Inc. v. Platte Chemical Co.*, 304 F.3d 1235, 1241 (Fed. Cir. 2002). The court's jurisdiction "extends to [those] cases and controversies for which the United States has waived its sovereign immunity." *Booth v. United States*, 990 F.2d 617, 619 (Fed. Cir. 1993). As the United States Court of Appeals for the Federal Circuit has held, Section 1498(a) "waives the United States' sovereign immunity . . . [by] allow[ing] for suit against the Government '[w]henever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right[.]" *Zoltek Corp. v. United States*, 672 F.3d 1309, 1318 (Fed. Cir. 2012).

The court's jurisdiction is effected, however, by the Assignment of Claims Act of 1940, 31 U.S.C. § 3727 (2012), that provides that "[a]n assignment may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued." 31 U.S.C. § 3727(b); *see also Ins. Co. of the West*, 243 F.3d at 1375 ("We conclude that the Tucker Act must be read to waive sovereign immunity for assignees as well as those holding the original claim, except as barred by a statutory provision such as the [Assignment of Claims Act]."). Exceptions have been recognized by federal courts and certain voluntary or involuntary assignments of claims may be valid, such as "transfers by will and general assignments for the benefit of creditors." *United States v. Shannon*, 342 U.S. 288, 292–93 (1952) (internal citations omitted). None of these exceptions apply in this case.

The predecessor to the United States Court of Appeals for the Federal Circuit has held that assignments of patent rights are subject to the Assignment of Claims Act. *See Foster*, 230 Ct. Cl. at 940 ("[T]he case law clearly establishes the applicability of [the Assignment of Claims Act] to prevent assignment of patent claims on patents issued subsequent to 1918).[10] As such, "voluntary assignments of patent claims are ineffective against the government[.]" *3rd Eye Surveillance, LLC v. United States*, 133 Fed. Cl. 273, 277 (Fed. Cl. 2017).

### b.   Plaintiff Failed To Establish That The Court Has Jurisdiction To Adjudicate Claims Alleged In The March 6, 2017 Complaint Arising Prior To October 27, 2016.

Plaintiff has the burden of establishing the court's jurisdiction. *See Cedars-Sinai Med. Ctr.*, 11 F.3d at 1583 ("The burden of establishing jurisdiction in the district court lies with the party seeking to invoke the court's jurisdiction."). The March 6, 2017 Complaint alleges that the TSA infringed the '844 Patent. Compl. ¶ 33. But, the Government challenges the factual basis of the court's subject matter jurisdiction. 7/5/17 Gov't Mot. at 3–4. Under these circumstances, the March 6, 2017 Complaint's allegations "are not controlling, and only uncontroverted factual allegations are accepted as true for purposes of the motion.   All other facts underlying the controverted jurisdictional allegations are in dispute and are subject to fact-finding by the . . . court." *Id.* at 1583–84.

The following documents were executed by Plaintiff, and concern the right to sue for patent infringement under the '844 Patent regarding the TSA's CAT/BPSS contracts, orders, and shipments:

- In January 2014, Plaintiff executed the Licensing Letter dated May 1, 2009, "entitl[ing Astornet] to . . . legally pursue infringers of the ['844 P]atent in relation to the CAT/BPSS opportunity." 7/18/17 Pl. Resp. Ex. A.

---

[10] The United States Court of Appeals for the Federal Circuit has held that United States Court of Claims decisions issued prior to September 30, 1982, are binding precedent. *See S. Corp. v. United States*, 690 F.2d 1368, 1369 (Fed. Cir. 1982).

- On February 1, 2014, Plaintiff executed the Assignment Letter, assigning "Astornet . . . the exclusive rights in [the] '844 [Patent] to litigate the CAT/BPSS matter[.]" 8/23/16 Pl. Brief Ex. I.

- On October 27, 2016, Astornet executed the Return Agreement, "return[ing] . . . all rights assigned to and/or acquired by Astornet in any form, in and to the ['844] Patent, including the right to enforce the ['844 P]atent and to collect for any and all past damages[.]" Compl. Ex. A.

The March 6, 2017 Complaint does not allege the date that Plaintiff first transferred the right to sue for patent infringement under the '844 Patent to Astornet.[11] The record reflects that, however, at some point, Plaintiff did so. 7/18/17 Pl. Resp. Ex. A; 8/23/16 Pl. Brief Ex. I; *see also* Complaint ¶ 1, *Astornet Techs.*, 2014 WL 10919516 (No. 14-cv-00245) ("Astornet is the sole exclusive licensee of, and owns all right, title, and interest to litigate in this matter . . . the '844 Patent."). But, when Plaintiff made that transfer is dispositive of whether the claims of infringement at issue in this case are barred by the Assignment of Claims Act. *See* 31 U.S.C. § 3727(b) ("An assignment may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued.").

In response to the Government's July 5, 2017 Motion For Partial Dismissal, Plaintiff proffered the Licensing Letter, purporting to transfer the right to "legally pursue infringers of the ['844 P]atent in relation to [the] CAT/BPSS opportunity" to Astornet as of May 1, 2009. 7/18/17 Pl. Resp. Ex. A. On September 22, 2017, the court directed Plaintiff to explain inconsistencies between the effective date of the Licensing Letter, *i.e.*, May 1, 2009, and the text of the Licensing Letter. *See Haddad v. United States*, 127 Fed. Cl. 565, 570 (Fed. Cl. 2016). In response, Plaintiff explained that the Licensing Letter was signed in 2014, but "predated" to May 1, 2009. 10/11/17 Pl. Reply at 3. Plaintiff's explanation, however, is inconsistent with prior representations to the court. As such, the court must determine whether the Licensing Letter satisfies the requirements of Federal Rule of Evidence ("FRE") 901(a).

FRE 901(a) provides that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." FED. R. EVID. 901(a). According to Plaintiff, the Licensing Letter was "provided to Astornet *on 5/1/2009.*" 7/18/17 Pl. Resp. at 4 (emphasis added); *see also* 7/18/17 Pl. Resp. at 1 ("the letter was dated *on* May 1, 2009" (emphasis added)). In an attempt to substantiate that representation, Plaintiff also proffered the Notarized Statement providing that the "exclusive license of [the '844] Patent . . . *took place on* May 1st, 2009[.]" 7/18/17 Pl. Resp. Ex. C. These representations appear to conform with the text of the Licensing Letter authorizing Astornet to engage in future activities, instead of ratifying past conduct, *e.g.*, "Astornet['s] . . . appointment entitles the company *to submit* [a] CAT/BPSS proposal." 10/11/17 Pl. Reply Ex. A (emphasis added). This text appears to imply that the Licensing Letter was written

---

[11] As the sole inventor, Plaintiff presumptively was the owner of the '844 Patent at the time of issuance, *i.e.*, December 29, 2009. *See Israel Bio-Eng'g Project v. Amgen, Inc.*, 475 F.3d 1256, 1263 (Fed. Cir. 2007) ("It is a bedrock tenet of patent law that an invention presumptively belongs to its creator." (internal quotations omitted)).

before Astornet submitted a proposal for the TSA's 2009 Solicitation, *i.e.*, prior to June 2009. But, this conflicts with Plaintiff's *post hoc* explanation that the Licensing Letter was signed in 2014, but predated. *Compare* 7/18/17 Pl. Resp. *and* 7/18/17 Pl. Resp. Ex. A, C, *with* 10/11/17 Pl. Reply. Instead, it seems that the Licensing Letter was written after the Government's July 5, 2017 Motion For Partial Dismissal, in an attempt to appear as if it was executed on May 1, 2009.[12]

For these reasons, the court has determined that the Licensing Letter does not meet the requirements of FRE 901(a). *See* FED. R. EVID. 901(a);[13] *see also Linear Tech. Corp. v. Micrel, Inc.*, 275 F.3d 1040, 1055 (Fed. Cir. 2001) (affirming the district court's exclusion of "letters [that] were not on letterhead[,] were unsigned," and bore no outward indicia of having ever been mailed to a customer, because of "the lingering questions regarding the letters' authenticity"); 5 J. WEINSTEIN & M. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 901.02[2] (2d ed. 2008) ("Rule 901(a) suggests the inherent necessity that an item of evidence be trustworthy to be admissible. . . . Many courts analyze authenticity questions, in part, in terms of trustworthiness."). Other than the Licensing Letter, however, Plaintiff has proffered no evidence establishing the date when he transferred the right to sue for patent infringement under the '844 Patent to Astornet.

Moreover, even if the court were to assume that the Licensing Letter was authentic, it transferred the right to "legally pursue infringers of the ['844 P]atent in relation to [the] CAT/BPSS opportunity" to Astornet as of May 1, 2009. *See Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1367 (Fed. Cir. 2010) ("A party may sue for past infringement transpiring before it acquired legal title if a written assignment expressly grants the party a right to do so."). Therefore, as of May 1, 2009, the right to sue infringers of the '844 Patent regarding the TSA's "CAT/BPSS

---

[12] In addition, on July 14, 2016, in a prior case, the court directed Plaintiff to "provide a legal document to establish that substantial rights to the ['844 P]atent reverted back to him, either by agreement with Astornet or otherwise under relevant State law[.]" *Haddad*, 127 Fed. Cl. at 570. In response, Plaintiff produced the Assignment Letter. 8/23/16 Pl. Brief Ex. I. Plaintiff, however, never proffered the Licensing Letter in the prior case and, in fact, never represented that any such letter existed, although it was relevant. Moreover, if the Licensing Letter was signed in January 2014, as Plaintiff asserts, the Assignment Letter, signed on February 1, 2014, would be superfluous, because these documents transferred the same right to sue for patent infringement under the '844 Patent.

[13] "A document accompanied by a certificate of acknowledgment . . . executed by a notary public" is "self-authenticating." FED. R. EVID. 902(8). If the document's authenticity is contested, however, "[t]he burden rests on the proponent of the [document] . . . to persuade the trial judge that the [document] is what it purports to be." 5 J. WEINSTEIN & M. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 902.02[2] (2d ed. 2008). In this case, although Plaintiff preferred the Notarized Statement, Plaintiff has nevertheless failed to meet this burden, because the Notarized Statement does not indicate when the Licensing Letter was written and signed. 7/18/17 Pl. Resp. Ex. C. Instead, the Notarized Statement provides only that Plaintiff "signed a letter dated 5/1/2009." 7/18/17 Pl. Resp. Ex. C.

opportunity"[14] resided in Astornet, not Plaintiff.[15] *See Pope Mfg. Co. v. Gormully & Jeffery Mfg. Co.*, 144 U.S. 248, 250–51 (1892) ("[I]t was obviously not the intention of the legislature to permit several monopolies to be made out of one, and divided among different persons within the same limits."). This right to sue for patent infringement did not revert to Plaintiff until October 27, 2016, when Astornet executed the Return Agreement. As a result, any right to sue for infringement arising between May 1, 2009[16] and October 27, 2016 resided solely in Astornet. Although the Return Agreement "return[ed]" the "right . . . to collect for any and all past damages" to Plaintiff (Compl. Ex. A), the Assignment of Claims Act renders this transfer ineffective against the Government and limits the court's jurisdiction.

For all these reasons, the court has determined that Plaintiff has failed to meet the burden to establish the court's jurisdiction under 28 U.S.C. § 1498(a), as to patent infringement claims arising prior to October 27, 2016 under the '844 Patent.[17]

---

[14] Plaintiff's argument that "CAT/BPSS' and "CAT" are different, is inconsistent with his prior statement that "CAT" is a "slightly revised CAT/BPSS[.]" Compl. ¶ 18. Moreover, Plaintiff's subsequent attempts to limit the scope of the Licensing Letter to cover only the 2009 Solicitation and the 2011 TSA Contracts, are "entitled to no weight." *See Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 666–67 (2012) ("[S]elf-serving litigating positions are entitled to no weight); *see also Pueblo of Santo Domingo v. United States*, 227 Ct. Cl. 265 (Ct. Cl. 1981) ("A mere self-serving statement . . . would not be entitled to much weight[.]").

[15] "Determining whether the right to sue for prior infringement has been transferred turns on the proper construction of the [transfer] agreements, which is a matter of state contract law." *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1117 (Fed. Cir. 1996); *see also DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1290 (Fed. Cir. 2008) ("[S]tate law governs the interpretation of contracts generally[.]"). In this case, Maryland state law applies. *See Houdaille Indus., Inc. v. United States*, 138 Ct. Cl. 301 (Ct. Cl. 1957) ("The nature, validity and interpretation of contracts are to be governed by the law of the state where the instrument was executed[.]"). "Maryland law generally requires giving legal effect to the clear terms of a contract[.]" *Calomiris v. Woods*, 727 A.2d 358, 361 (Md. 1999).

[16] Although the Licensing Letter's purported effective date of May 1, 2009 predates issuance of the '844 Patent by almost six months, claims arising during this time period are beyond the court's jurisdiction, because the court's jurisdiction under Section 1498(a) is limited to "claims against the government arising out of post-issuance government use of an invention." *Hornback v. United States*, 601 F.3d 1382, 1386 (Fed. Cir. 2010) ("The language of section 1498(a) is mandatory, and therefore grants the [United States] Court of Federal Claims exclusive jurisdiction to hear all claims against the government arising out of post-issuance government use of an invention.").

[17] Although the Government's July 5, 2017 Motion For Partial Dismissal moves also for dismissal of the same claims pursuant RCFC 12(b)(6), the court need not address these arguments, because the court has determined that it does not have jurisdiction under RCFC 12(b)(1).

IV.    **CONCLUSION.**

For the reasons discussed herein, the Government's July 5, 2017 Motion For Partial Dismissal is granted.  The court will convene a status conference within the next two weeks to ascertain how to proceed with Plaintiff's remaining claims.

**IT IS SO ORDERED.**

_____
**SUSAN G. BRADEN**
**Chief Judge**

16