# In the United States Court of Federal Claims

No. 17-307
(Filed: 12 January 2021)

```
*****************************************
MICHAEL HADDAD,                          *
                                         *
              Plaintiff,                 *
                                         *
v.                                       *   Patent Infringement; 28 U.S.C. § 2514;
                                         *   Motion for Summary Judgment; RCFC 56;
THE UNITED STATES,                       *   Motion for Forfeiture; Fraud.
                                         *
              Defendant,                 *
and                                      *
                                         *
TRANS DIGITAL TECHNOLOGIES               *
LIMITED LIABILITY COMPANY and            *
IDEMIA IDENTITY & SECURITY USA           *
LLC,                                     *
                                         *
              Third-Party Defendants.    *
                                         *
*****************************************
```

*Geoffrey Mason*, MOARBES, LLP, of Washington, DC, for plaintiff.

*Conrad Joseph DeWitte, Jr.,* Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were *Joseph H. Hunt*, Assistant Attorney General, and *Gary L. Hausken*, Director, all of Washington, DC, for defendant.

*Richard L. Brophy*, Armstrong Teasdale, LLP, of St. Louis, MO, for third-party defendants Trans Digital Technologies Limited Liability Company and Idemia Identity & Security USA LLC.

## OPINION AND ORDER

**HOLTE**, **Judge**.

Plaintiff, originally proceeding *pro se*, accuses the government of infringing his patent. The government, along with noticed third-party defendants, filed three separate motions for summary judgment under Rule 56 of the Rules of the United States Court of Federal Claims on the following grounds: invalidity of plaintiff's patent; the government's counterclaim results in a forfeiture of plaintiff's claim; and non-infringement of plaintiff's patent. This case was transferred to the undersigned Judge on 29 July 2019. All three motions are fully briefed. The Court deferred consideration of the motions for summary judgment on the issues of invalidity

and non-infringement pending resolution of the government's motion for summary judgment on the counterclaim.  Oral argument was scheduled for 13 February 2020.  Prior to oral argument, plaintiff, now represented by counsel, filed a motion for reconsideration of this Court's 28 February 2018 order dismissing certain claims for lack of standing.  The Court held oral argument on both the government's motion for summary judgment on the counterclaim and plaintiff's motion for reconsideration on 4 September 2020.  For the following reasons, the Court **DENIES** the government's motion for summary judgment on the counterclaim and **DENIES** plaintiff's motion for reconsideration.

## I.   Factual History

The background and facts of this case are set out in three previous opinions by this court: *Haddad v. United States*, No. 12-165 (Fed. Cl. 5 June 2012) (hereinafter *Haddad 2012*), *Haddad v. United States*, 128 Fed. Cl. 373 (2016) (hereinafter *Haddad I*), and *Haddad v. United States*, 136 Fed. Cl. 572 (2018) (hereinafter *Haddad II*).  Any remaining facts necessary for resolving the present motions are drawn from the parties' filings and, unless otherwise noted, are undisputed.

U.S. Patent No. 7,639,844 (the '844 patent)[1] issued to plaintiff Michael Haddad on 29 December 2009.  *Haddad II*, 136 Fed. Cl. at 574.  In June 2009, the Transportation Security Agency ("TSA") sought solicitation proposals for an "improved security system[]" known as the "Credential Authentication Technology-Boarding Pass Scanning System ('CAT/BPSS')." Compl. ¶ 13.  Plaintiff, acting through his company Astornet Technologies, Inc. ("Astornet"), "submitted a proposal and was selected for testing and advanced to the next stage" of the solicitation.  *Haddad II*, 136 Fed. Cl. at 574 (internal quotation marks omitted).  Astornet was not awarded the solicitation.  *Id.*  Following a delay in the procurement of the CAT/BPSS in June 2012, "the TSA issued a new solicitation . . . seeking proposals for a slightly revised CAT/BPSS."  *Id.* (internal quotation marks omitted).  Proposals for the new solicitation were due no later than 21 January 2014.  *Id.*

In 2012, with a case already pending in the United States District Court for the District of Maryland, Mr. Haddad filed a case in the Court of Federal Claims.  *See Haddad 2012*, No. 12-165 at 1 (order dismissing the case pursuant to 28 U.S.C. §1500).  After plaintiff acknowledged the claims in both cases were based on the same operative facts, the Court of Federal Claims action was dismissed without prejudice pursuant to 28 U.S.C. § 1500.  *Id.* at 2.  While the Court of Federal Claims was considering the § 1500 dismissal, however, Mr. Haddad moved to dismiss the district court action with prejudice.  *Astornet Techs. Inc. v. BAE Systems, Inc.*, 802 F.3d 1271, 1274–75 (Fed Cir. 2015).  After some procedural confusion, and obtaining counsel, the district court action was "reopened solely for the purpose of dismissing it without prejudice."  *Id.* (internal quotation marks and emphasis omitted).

---

[1] Mr. Haddad on the first page of his complaint labels the patent as "U.S. Patent No. 7,649,844," but on page two of his complaint he labels the patent as "U.S. Patent No. 7,639,844."  Compl. ¶ 1, 5.  The correct number is U.S. Patent No. 7,639,844.  *See* U.S. Patent No. 7,639,844 B2, front page ("Inventor: Michael A. Haddad . . ."); U.S. Patent No. 7,649,844 B2, front page ("Inventors: Rajeev Bector . . . ; Sachin Jain . . . ; Ramana Mellacheruvu . . . ; Umesh Mahajan . . .").

On 27 January 2014, "Astornet filed a lawsuit for infringement of the '844 Patent . . . in the United States District Court for the District of Maryland," hereinafter referred to as the "District of Maryland Litigation." *Haddad v. United States*, 136 Fed. Cl. 572 (2018). In the District of Maryland Litigation, the complaint "alleged that Astornet was the sole exclusive licensee of, and owns all right, title, and interest to litigate in this matter . . . the '844 Patent." *Id.* (internal quotation marks omitted). On 1 February 2014, plaintiff "signed another letter dated February 1, 2014," hereinafter referred to as the "2014 Assignment." *Id.* The 2014 Assignment purported to "assign Astornet . . . the exclusive rights in [the] '844 [patent] to litigate the CAT/BPSS matter . . . in the United States Federal Court." *Id.* Astornet was not awarded the new solicitation. *Id.* The District of Maryland Litigation was dismissed in August 2014, *see Astornet Techs. Inc. v. BAE Systems, Inc.*, Nos. 14-245, 14-543, 14-547, 2014 WL 10919516 (D. Md. Aug. 28, 2014), and the dismissal was affirmed by the Federal Circuit on 17 September 2015. *See Astornet Techs.*, 802 F.3d at 1283.

On 6 October 2015, plaintiff "filed two *pro se* Complaints in the United States Court of Federal Claims for infringement of [the '844 patent] . . . ." *Haddad I*, 128 Fed. Cl. at 374. In *Haddad I*, plaintiff "was ordered to provide documentation to establish that, at the time the October 6, 2015 Complaints were filed, he owned the '844 Patent or it reverted to him, either by agreement with Astornet Technologies, Inc., or otherwise under relevant state law." *Id.* In response to this court's order, plaintiff provided a copy of the 2014 Assignment and represented the 2014 Assignment "was notarized on August 19, 2016." *Id.* This court found the 2014 Assignment insufficient to establish plaintiff's individual ownership of the '844 patent at the time the complaints were filed, as "*nunc pro tunc* assignments do not confer retroactive patent ownership." *Id.* (citing *Diamond Coating Techs., LLC v. Hyundai Motor Am.*, 823 F.3d 615, 621 (Fed. Cir. 2016) ("[plaintiff] asserts these nunc pro tunc agreements effectively establish Diamond's status as a patentee. . . . We conclude they do not.")).[2] *Haddad I* was dismissed for plaintiff's failure to establish standing. *Id.*

Astornet executed a return assignment on 27 October 2016 (hereinafter the "Return Assignment"), returning "all rights assigned to and/or acquired by Astornet in any form, in and to the ['844] Patent, including the right to enforce the ['844] Patent and to collect for any and all past damages." *Haddad II*, 136 Fed. Cl. at 575. Plaintiff filed the complaint in this case *pro se* on 6 March 2017. *Id.* at 575. Once again, the government moved to dismiss the case pursuant to Rule 12 of the Rules of the Court of Federal Claims ("RCFC") "for lack of subject matter jurisdiction and/or for failure to state a claim upon which relief may be granted." United States' Motion for Partial Dismissal Under RCFC 12(B)(1) and RCFC 12(B)(6) ("Def.'s Mot. for Partial Dismissal"), ECF No. 20 at 1.

In response to the government's motion to dismiss, plaintiff attached a copy of an assignment letter dated 1 May 2009 (the '2009 Assignment') accompanied by "a signed and notarized statement dated July 10, 2017 (the 'Notarized Statement'), executed by plaintiff, in his

---

[2] The phrase "nunc pro tunc" is Latin for "now for then." *Nunc pro tunc*, Black's Law Dictionary (11th ed. 2019). The phrase is generally used in a legal sense to confer "retroactive legal effect through a court's inherent power." *Id.*

personal capacity and in his capacity as 'CEO/President' of Astornet." *Haddad II*, 136 Fed. Cl. at 576. The 2009 Assignment appointed Astornet the "exclusive licensee to pursue [the] TSA opportunity" concerning the CAT/BPSS. *Id.* at 575. The Notarized Statement represented the original grant of an exclusive license from plaintiff to Astornet "*took place* on May 1st 2009," while further indicating plaintiff "signed a letter dated 5/1/2009 granting Astornet . . . a license." *Id.* at 576. As this court previously noted, "plaintiff did not represent that he signed the [2009 Assignment] in 2014. Instead, plaintiff stated the licensing letter 'was provided to Astornet *on* 5/1/2009.'" *Id.* at 574 n.3.

This court issued a show cause order on 22 September 2017, ECF No. 31, addressing an inconsistency with the 2009 Assignment: the 2009 Assignment listed the patent number of the '844 patent, despite being dated "more than six months before the '844 Patent would have been assigned its patent number." *Id.* at 576–77. This Court ordered plaintiff to "explain[] how [he] knew the patent number of the '844 Patent on May 1, 2009." *Id.* Plaintiff responded he "never affirmed . . . that he signed a letter **ON** 5/1/2009, but specifically signed a letter dated 5/1/2009." *Haddad II*, 136 Fed. Cl. at 577 (emphasis in original). Plaintiff further stated the 2009 Assignment was prepared by his attorney "in 2014[,] signed in [January] 2014, and predated to the period when [the TSA] issued the [original solicitation]." *Id.* Plaintiff explained the 2009 Assignment was predated in this manner to permit plaintiff to file a patent infringement lawsuit in district court. *Id.* at 574 n.3. This court found plaintiff's explanation "inconsistent with prior representations to the court" in which plaintiff indicated "the Licensing Letter was written . . . prior to June 2009." *Id.* at 581–82. As a result, the court determined "that the [2009 Assignment] does not meet the requirements of [the Federal Rules of Evidence 901(a)]" for "authenticating or identifying an item of evidence" which requires "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.'" *Id.* at 582–83.

In *Haddad II*, this court found the Assignment of Claims Act, 31 U.S.C. § 3727, barred plaintiff from recovering for any infringement arising prior to 27 October 2016 (the date the Return Assignment was executed), regardless of the effect of the 2009 Assignment. *Id.* at 584. Plaintiff's claims of patent infringement prior to 27 October 2016 were dismissed for a failure to "establish the court's jurisdiction under 28 U.S.C. § 1498(a)." *Id.*

## II.   **Procedural History**

Plaintiff filed the present complaint on 6 March 2017. *See* Compl. On 3 May 2017, this Court issued notices to interested third parties BAE Systems Information Solutions, Inc., NCR Government Systems, LLC, Trans Digital Technologies, Inc. ("Trans"), and MorphoTrust USA, Inc. ("Idemia").[3] *See* Notice, ECF No. 11. On 28 February 2018, this Court dismissed plaintiff's claims for patent infringement accruing prior to 27 October 2016. *See* Memorandum Opinion and Order Granting the Government's Motion for Partial Dismissal, ECF No. 39 at 15.

---

[3] MorphoTrust USA, Inc. has also been referred to as MorphoTrust USA, LLC throughout these proceedings. Pursuant to the RCFC 7.1 disclosure statement filed 15 March 2019, the previous MorphoTrust entity is now identified in these proceedings as Idemia Identity & Security USA LLC. *See* Idemia Identity & Security USA LLC's Supplemental RCFC 7.1 Disclosure Statement, ECF No. 61.

The government answered the complaint on 13 July 2018. *See* Answer, ECF No. 44. In its answer, the government alleged a counterclaim against plaintiff pursuant to the special plea in fraud statute, 28 U.S.C. § 2514: "[p]laintiff practiced or attempted to practice fraud against the United States in proof, statement, establishment, or allowance of a claim against the United States . . . ." *Id.* at ¶¶ 63–64. According to the government, plaintiff thereby forfeited his claims against the United States. *Id.* at ¶ 63. Plaintiff responded to the government's counterclaim on 1 August 2018, denying all allegations of fraud and further included his own counterclaim accusing the defendant of "trying to induce the court into falsified information that has no basis" and "using its power as an official entity to affect the decision of the court." Reply to Defendant Answer ("Def.'s Answer to Gov't Countercl."), ECF No. 46 at 1–2. On 19 December 2018, plaintiff amended his answer to the government's counterclaim, responding to the government's counterclaim in more detail and requesting the Court to dismiss the government's counterclaim. *See* Motion to Dismiss Defendant Counterclaims and Request for Case Documentation ("MTD Def.'s Countercl."), ECF No. 52.

On 27 July 2018, this court dismissed third-party defendants BAE Systems Information Solutions, Inc. and NCR Government Systems, LLC. *See* Order Dismissing Third-Party Defendants, ECF No. 45. On 26 October 2018, still proceeding *pro se*, plaintiff filed a motion to dismiss the case without prejudice. *See* Plaintiff's Motion for Entry of Order Dismissing Case Without Prejudice, ECF No. 47. Plaintiff stated he was not "able to defend this case properly," and further indicated his intent "to file the case, at a future time, represented by a legal counsel, based on similar facts." *Id.* at 1. This Court denied plaintiff's motion to dismiss the case without prejudice because "[i]f the court dismisses Plaintiff's claim against the Government, the Government's counterclaim can no longer 'remain pending for independent adjudication.'" Memorandum Opinion and Order, ECF No. 51 at 2 (quoting RCFC 41(a)(2)).

On 30 April 2019, the government filed a motion for summary judgment on its counterclaim. *See* Motion for Summary Judgment on Defendant's Counterclaim Arising Under 28 U.S.C. § 2514 ("MSJ on Countercl."), ECF No. 65. On 20 May 2019, plaintiff filed a response to the government's motion for summary judgment. *See* Reply to Defendant' Motion for Summary Judgement on Counterclaim and Invalidity of 844' [sic] Patent ("Resp. to MSJ on Countercl."), ECF No. 66. Plaintiff further filed a cross-motion for summary judgment on the government's counterclaim on 20 May 2019. *See* Motion to Dismiss Defendant Counterclaims and Request for Case Documentation ("Cross-MSJ on Countercl."), ECF No. 67.[4]

---

[4] Originally filed as a motion to dismiss the government's counterclaim, the court deemed plaintiff's second 20 May 2019 filing, ECF No. 67, as a cross-motion for summary judgment. *See* Order, ECF No. 68. Given language in plaintiff's response to the government's motion for summary judgment, ECF No. 66, referencing ECF No. 67 as Exhibit 1 to that filing, it appears the docketing of ECF No. 67 as a cross-motion for summary judgment was done in error. This is further supported by the fact ECF No. 67 is an identical document to plaintiff's amended answer, ECF No. 52, filed 19 December 2018. At oral argument it was clarified and agreed by both parties ECF No. 67 was identical to ECF No. 52 and was filed simply in opposition to the government's summary judgement motion and was not intended to be a cross-motion for summary judgement. *See* Tr. at 15:10–24. Accordingly, plaintiff's Cross Motion for Summary Judgment, ECF No. 67, is denied as moot and considered as part of plaintiff's opposition to the government's summary judgement motion. The Court thus addresses only the government's motion for summary judgment on the counterclaim, taking account of all briefing associated with the counterclaim and plaintiff's previously recognized cross-motion for summary judgment on the counterclaim.

The government filed a reply in support of its motion for summary judgment on the counterclaim and a response to plaintiff's cross-motion for summary judgment on the counterclaim on 24 June 2019.  *See* Defendant's Combined Reply in Support of its Motion for Summary Judgment on Defendant's Counterclaim Arising Under 28 U.S.C. § 2514 and Response to Plaintiff's Cross-Motion for Summary Judgment on Defendant's Counterclaim ("Gov't Reply in Supp. of MSJ on Countercl."), ECF No. 75.  Plaintiff filed on 24 June 2019 a sur-reply to the government's motion for summary judgment on the counterclaim.  *See* Reply to Defendant' Reply in Support of Motion for Summary Judgment of Invalidity by Defendant the United States and Third-Party Defendants Trans Digital Technologies LLC and Idemia Identity & Security USA LLC ("Pl.'s First Sur-Reply"), ECF No. 76.  On 1 July 2019, plaintiff filed a reply to the government's response to plaintiff's cross-motion for summary judgment on the counterclaim.  *See* Reply to Defendant's Combined Reply in Support of its Motion for Summary Judgment on Defendant's Counterclaim Arising Under 28 U.S.C. § 2514 and Response to Plaintiff's Cross-Motion for Summary ("Pl.'s Second Reply"), ECF No. 79.  This case was reassigned to the undersigned Judge on 29 July 2019.  *See* Order, ECF No. 81.

Third-party defendants Idemia and Trans' have also filed joint motions for summary judgment on the issues of patent invalidity and non-infringement.  *See* Mot. for Summ. Judgment of Invalidity by Def. the U.S. and Third-Party Defs. Trans Digital Tech. LLC and Idemia Identity & Security USA LLC, ECF No. 63; Mot. for Summ. Judgment of Non-Infringement by Def. the U.S. and Third-Party Defs. Trans Digital Tech. LLC and Idemia Identity & Security USA LLC, ECF No. 88.  On 25 October 2019, this Court stayed consideration of Idemia and Trans' motions for summary judgment pending resolution of the government's motion for summary judgment on the counterclaim.  *See* Order, ECF No. 92.

Oral argument on the government's motion for summary judgment on the counterclaim and plaintiff's cross-motion for summary judgment on the counterclaim was set for 25 November 2019.  *See id.*  This Court canceled the 25 November hearing on 20 November 2019, noting "the Court anticipates forthcoming filing from plaintiff regarding plaintiff's attempts to obtain counsel." Order, ECF No. 95 at 1.[5]  On 27 January 2020, the Court set oral argument to be held 13 February 2020, recognizing plaintiff's "desire to be represented by counsel at oral argument." Order, ECF No. 97 at 1.

On 6 February 2020, plaintiff, now represented by counsel, filed a motion for reconsideration of this Court's 28 February 2018 order dismissing claims for patent infringement accruing prior to 27 October 2016.  *See* Motion for Reconsideration of February 28, 2018 Order ("Mot. for Recons."), ECF No. 98.  Plaintiff asks the Court to reconsider the 28 February 2018 order because: (1) "Mr. Haddad's claims against the United States arose in 2012 at the latest"; (2) "the Assignment of Claims Act, 31 U.S.C. § 3727(b), . . . rendered ineffective all of his

---

[5] On 2 December 2019, plaintiff filed an unopposed motion to postpone the 25 November hearing for 30 days, explaining "[t]his delay would help Plaintiff to secure a counsel for representing Plaintiff in this Court."  Motion, ECF No. 96 at 1.  Although this filing was not received and docketed by the Clerk's Office until 2 December 2019, plaintiff's filing is dated 13 November 2019.  The delay in receiving plaintiff's filing seeking to postpone the 25 November hearing resulted in the Court's 20 November 2019 order preemptively granting plaintiff the very relief sought in his 2 December 2019 motion.  Accordingly, the Court found no occasion to rule on plaintiff's 2 December 2019 motion.

assignments after 2012, including his 2014 assignment and his later re-assignment"; and (3) his previous claims "should not have been dismissed as having been assigned to non-party Astornet in January 2014." *Id* at 1 (emphasis in original).

The parties expressed disagreement regarding how plaintiff's motion for reconsideration would affect the 13 February oral argument in a joint status report filed 11 February 2020. *See* Joint Status Report, ECF No. 100 at 1, 3. The Court thus canceled the 13 February oral argument, ordering the parties to confer and submit a joint status report "providing a proposed briefing schedule for plaintiff's motion for reconsideration, as well as a proposed date for oral argument addressing" both the government's motion for summary judgment and plaintiff's motion for reconsideration. Order, ECF No. 101 at 2. On 25 February 2020, the Court set a briefing schedule for plaintiff's motion for reconsideration to conclude on 29 May 2020, with oral argument to be scheduled no sooner than 25 June 2020. *See* Order, ECF No. 103.

Pursuant to the 25 February 2020 order, the Government filed a response to Plaintiff's motion for reconsideration on 15 May 2020. *See* Defs.' Opp'n to Pl.'s Mot. for Recons. of February 28, 2018 Order ("Gov's Response to Mot. for Recons."), ECF No. 105. On 29 May 2020, plaintiff filed a reply in support of the motion for reconsideration. *See* Reply in Support of Motion for Reconsideration of February 28, 2018 Order ("Reply in Supp. of Mot. for Recons."), ECF No. 107. Oral argument on both the government's motion for summary judgment on the counterclaim and plaintiff's motion for reconsideration was scheduled for 1 July 2020. *See* Order, ECF No. 106. On 5 June 2020, the Chief Judge of the Court of Federal Claims issued a general order indicating "[a]ll proceedings in this court scheduled to occur before July 6, 2020, shall be held by telephone conference or video conference . . . ." General Order (June 5, 2020). In response to the general order, the Court contacted the parties to determine whether they preferred to move forward with either a telephonic or videoconference proceeding, or alternatively to postpone oral argument until the National Courts Building reopened for proceedings. Upon request of the parties, the Court rescheduled oral argument for 15 July 2020. *See* Order, ECF No. 108. On 26 June 2020, the prohibition on in-person proceedings at the National Courts Building was extended until 14 August 2020. *See* Order Restricting Court Access to the National Courts Building Until August 14, 2020 (June 26, 2020). Oral argument scheduled for 15 July 2020 was thus canceled. *See* Order, ECF No. 109. Oral argument was held on 4 September 2020. *See* Order, ECF No. 110.

### III.  The Government's Motion for Summary Judgment on Its Counterclaim Pursuant to 28 U.S.C. § 2514

#### A.  Applicable Law

##### 1.  Legal Standard for Summary Judgment

RCFC 56(a) states "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." This Court's interpretation of the RCFC is guided by case law interpreting the Federal Rules of Civil Procedure. *See* 2002 Rules Committee Note, Rules of the United States Court of Federal Claims (as amended July 1, 2019) ("[I]nterpretation of the court's rules will be

guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure."). A grant of summary judgment is proper when the moving party, based on the evidence and materials in the record, "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### 2.      Legal Standard for Applying the Forfeiture Statute, 28 U.S.C. § 2514

Pursuant to 28 U.S.C. § 2514, "[a] claim against the United States shall be forfeited to the United States by any person who corruptly practices or attempts to practice any fraud against the United States in the proof, statement, establishment, or allowance thereof." The government is tasked with an elevated burden to establish the perpetuation of fraud on the United States. "To prevail under § 2514, the government must 'establish by clear and convincing evidence that the [party alleged to have undertaken fraud] knew that its submitted claims were false and that it intended to defraud the government by submitting those claims.'" *Daewoo Eng'r. and Constr. Co., Ltd. v. United States*, 557 F.3d 1332, 1341 (Fed. Cir. 2009) (quoting *Commercial Contractors, Inc. v. United States*, 154 F.3d 1357, 1362 (Fed. Cir. 1998)). When such fraud occurs, this Court "shall specifically find such fraud or attempt and render judgment of forfeiture." 28 U.S.C. § 2514.

"A valid cause of action under [the forfeiture statute] must be tied to the submission of a claim, whether in producing false proof to support a claim . . . or in falsely establishing the claim." *Kellogg Brown & Root Servs. v. United States*, 728 F.3d 1348, 1366 (Fed. Cir. 2013) (quoting *Kellogg Brown & Root Servs. v. United States*, 99 Fed. Cl. 488, 501, (2011)) (internal citations omitted). "Mere negligence, inconsistency, or discrepancies are not actionable" under 28 U.S.C. § 2514. *Oasis Int'l Waters, Inc. v. United States*, 134 Fed. Cl. 405, 428 (2016). "Once fraud is established, '[t]he use of the word "shall" . . . makes the judgment of forfeiture obligatory on the court; the court has no discretion to turn a blind eye to an attempt, whether successful or not, to commit fraud in the statement of a claim against the United States.'" *Id.* at 429 (quoting *Am. Heritage Bancorp v. United States*, 61 Fed. Cl. 376, 385 (2004)).

### B.      Parties' Arguments

The government seeks summary judgment on its counterclaim pursuant to 28 U.S.C. § 2514, arguing plaintiff made "misleading statements and submitt[ed] to the Court at least one document containing information that was false for the purpose of practicing a fraud on the United States in the proof, statement, establishment or allowance of his claim." *See* MSJ on Countercl. at 1. The alleged fraud includes plaintiff's submission of the 2017 Notarized Statement, which the government argues contained "a misleading statement by Mr. Haddad . . . in the second paragraph [saying] 'Whereas Mr. Haddad certifies that as per the record that he signed a letter dated May 1ˢᵗ, [2009] granting Astornet Technologies a license.'" Tr. at 18:3–7.

The government advances the 2009 Assignment as the "false proof" of this misleading statement. Tr. at 18:10–12. The government argues "[e]ven [Mr. Haddad's] own *post hoc* explanation—that the 2009 Assignment was actually signed in January 2014 and backdated to May 2009—provides clear and convincing evidence that Mr. Haddad knew he was attempting to mislead the Court through the documents he submitted to the Court and the statements about those documents." *See* MSJ on Countercl. at 10 (internal citations omitted).[6]

The government argues the 2017 Notarized Statement and the 2009 Assignment were "an attempt of Mr. Haddad to try and recapture even more claims against the Government" and further emphasis that "[Mr. Haddad] could have explained how they came about in his statements to the court. He did not." Tr. at 36:18–25. The government argues further that had the patent number not been on the 2009 Assignment, then both the government and the Court would have accepted the 2009 licensing letter as having been executed in 2009, thus recapturing those claims previously dismissed in *Haddad I*. Tr. at 42:10–19. The government argues § 2514 necessitates forfeiture of Mr. Haddad's entire claim. *See* MSJ on Countercl. at 9 ("[t]he use of the word 'shall' [in § 2514] makes the judgment of forfeiture obligatory on the court [if fraud against the United States is shown]." (citation and quotation marks omitted)).

Plaintiff denies all allegations of fraud throughout his several filings. *See* Resp. to MSJ on Countercl. at 3 ("Plaintiff committed NO FRAUD in the matter, not in the letter, nor in any other document presented to this court.") (emphasis in original). During oral argument, counsel for plaintiff reiterated plaintiff did not commit fraud. *See* Tr. at 20:7–11 ("[The 2009 Assignment] was intended to be something that we could represent truthfully to the Court that Astornet had all the relevant rights to proceed in that case, but nothing more than that."). Plaintiff's counsel also noted Mr. Haddad, as a *pro se* plaintiff, had filed documents which are "confusing, but not fraud." Tr. at 21:25–22:5 ("[P]ro se plaintiffs do a lot of things on their own and they can create a lot of confusion . . . at the end of the day with all of the inferences drawn in our favor, I think what we've got is a set of documents that are confusing, but not fraud."); *see also id*. at 37:5–7 ("Obviously a lot of confusion resulted from [The 2009 Assignment], but . . . I don't think this is fraud."); *id*. at 37:14–16 ("Mr. Haddad drafted things when standing alone are confusing, but I don't think they're fraud."). At oral argument, plaintiff's counsel advanced separate arguments relating to the 2017 Notarized Statement and the 2009 Assignment. Regarding the 2017 Notarized Statement, plaintiff's counsel was unable to provide direct knowledge of plaintiff's intent.[7] Tr. at 29:20–22. Plaintiff's counsel instead represented his belief, through drawing "reasonable inferences," is plaintiff intended the factual statements in the

---

[6] The government further points to this Court's opinion in *Haddad II* to support these allegations, stating "Judge Braden has already made specific findings as to the false nature of the May 2009 Licensing Letter." *Id*. at 9 (citing *Haddad II*, 136 Fed. Cl. at 582–584). The government also contends "Mr. Haddad's previous presentation (and reliance upon) the February 2015 Assignment Letter in the 2015 Court of Federal Claims action . . . provides additional grounds for forfeiture." *Id*. at 11.

[7] During the filing period with this Court and at the time the 2017 Notarized Statement was drafted, Plaintiff was *pro se*, and at Oral Argument Plaintiff was represented by counsel. Plaintiff's counsel was unable at Oral Argument to speak to the Plaintiff's direct knowledge and intentions at the time of filing the 2009 Assignment and 2017 Notarized Statement with this Court. Tr. at 25:11–12. Plaintiff's counsel was also unable at Oral Argument to speak to the Plaintiff's direct knowledge and intention when the 2017 Notarized Statement was created. Tr. at 29:18–22.

2017 Notarized Statement to "be used as a preamble, to sort of set the situation." Tr. at 30:14–16, 34:3–4.

Regarding the 2009 Assignment, plaintiff's counsel clarifies the 2009 Assignment was originally drafted for use in the District of Maryland Litigation. Tr. at 19:14–18. Plaintiff's counsel, the original drafter of the 2009 Assignment, argues the purpose of the 2009 Assignment was to create a retroactive assignment.[8] Tr. at 23:7–14. Plaintiff's counsel further emphasized, had he been representing Mr. Haddad at the time the 2009 Assignment was produced in response to the show cause order of 22 September 2017, he would have additionally produced a chain of emails to show the intent of the 2009 Assignment was to create the retroactive assignment. Tr. at 23:7–24:2, 37:2–7. Plaintiff's counsel concludes: "the record here is immense, but not something that's beyond a reasonable doubt . . . you know, clear and convincing evidence, drawing inferences in our favor, finding intent on Mr. Haddad's behalf." Tr. 46:6–10.

## C.    Analysis of Summary Judgment Pursuant to § 2514 Forfeiture Statute

When analyzing a motion for forfeiture due to fraud against the government under § 2514, the government must show, through clear and convincing evidence, not only that it was *known* by the party opposing the government's motion the facts in question were false, but also that these facts were submitted with the *intent* by the party to defraud the government. *See Daewoo Eng'r.*, 557 F.3d at 1341. Here, the government does not argue plaintiff's statements are "false" statements, but rather asserts plaintiff made "misleading" statements to the court. *See* Tr. at 39:17–22 ("I would say that Mr. Haddad probably didn't perjure himself in signing this 2017 ownership statement. It appears to be a true statement, but even though it's a true statement, it was a misleading statement, and that's something to look at under 28 U.S.C. 2514."). The government can only identify a single case where this court found the government satisfied its burden under § 2514 at the summary judgment stage: *Heger v. United States*, 112 Fed. Cl. 224 (2013). In *Heger*, plaintiff "steadfastly contended that he had no income whatsoever, and furthermore that he was unemployed during the relevant time periods." *Heger*, 112 Fed. Cl at 229. The evidence proffered by the government, however, affirmed plaintiff was "in actuality employed by at least two different companies during that time." *Id*. Accordingly, the court found § 2514 was satisfied when one of the claims made by the plaintiff was "proven to be patently false," and the false claim was made with the intent to defraud the Court. *Id*. at 229–30. Here, the government admits plaintiff's statement in the 2017 Notarized Statement is not inherently false, but rather "putting a gloss on the truth." Tr. at 43:20–21. The government offers up the 2009 Assignment as proof of the misrepresentation in the 2017 Notarized Statement. Tr. at 18:10–12.

Whether a misleading, but not false, statement is sufficient to trigger application of § 2514 is a novel question before this Court. In order to resolve the present dispute, however, the Court need not decide the issue at this time. Assuming the premise a misleading statement, which is not false, is sufficient to trigger application of § 2514, the Court moves on to consider whether plaintiff's intent in submitting the 2017 Notarized Statement, along with the 2009 Assignment, was "to defraud the government by submitting those claims." *Daewoo Eng'g.*, 557

---

[8] Plaintiff's counsel was under the impression that a *nunc pro tunc* assignment was allowed, but acknowledged Judge Braden had ruled a *nunc pro tunc* assignment cannot confer patent ownership. *See* Tr. at 24:21–25.

F.3d at 1341.  At the summary judgment stage, as the government noted during oral argument, it is inappropriate to directly question a plaintiff represented by counsel regarding his intent behind certain actions.  Tr. at 25:11–24.  Therefore, the only evidence of plaintiff's intent at this stage is to "link inferences drawn from each proffered fact and offer the whole as clear and convincing evidence that [the party] committed fraud . . . ."  *Liquidating Tr. Ester Duval of KI Liquidation v. United States*, 89 Fed. Cl. 29, 42 (2009) (denying the government's summary judgment motion on the issue of fraud because "the inferences that [the government] asks the court to draw from those facts [proffered by the government] are too attenuated );[9] *see also Kamen Soap Products Co. v. United States*, 129 Ct. Cl. 619, 644 (1954) (Ruling the plaintiff committed fraud after a trial revealed "a number of . . . circumstances from which [the court] must conclude that the questioned documents are inconsistent with and contrary to the established facts").[10]

In examining the evidence on the record, this Court must draw all inferences in "the light most favorable to the party opposing the motion."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* 475 U.S. 574, 587 (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

---

[9] In *Liquidating*, the government moved for summary judgment based on "the factual assertion that [plaintiff] falsely certified that it had paid its 'subcontractors and suppliers in the monthly progress payment requests' that were submitted to [the government]."  *Liquidating Tr. Ester Duval of KI Liquidation*, 89 Fed. Cl. at 37.  The court found plaintiff established, by "proffer of and citation to numerous record documents," the government knew plaintiff did not have enough money to pay its subcontractors and suppliers, and the government's knowledge "preclude[d] [the government] from establishing intent as a matter of fact and law."  *Id.* at 42.  The court also found defendants failed to offer sufficient facts in support of its fraud claim, as "the inferences that defendant asks the court to draw from those facts are too attenuated: [plaintiff] was paid all the money billed for line item STF 1074; line item STF 1074 was the only line item that included the amounts billed by [plaintiff's subcontractor] and owed to this supplier for supplies; [plaintiff] did not pay [plaintiff's subcontractor] the full amount invoiced for supplies; therefore, [plaintiff] knew that its submitted and certified invoices were false, and [plaintiff]  intended to defraud [the government] by submitting those claims in order to induce payment."  *Id.*  Accordingly, the court held the government did not provide "clear and convincing evidence that [plaintiff] committed fraud under 28 U.S.C. § 2514" and denied the government's summary judgment motion.  *Id.* at 42, 44.

[10] In *Kamen Soap Products Co.*, the government filed a special plea in fraud, which was the sole issue before the court at trial. 129 Ct. Cl at 622.  The government's special plea in fraud was based on seven interoffice memoranda that allegedly had not been prepared in 1947, as claimed by plaintiff.  *Id.* at 639.  The court found "[t]he undisputed evidence shows that the originals of the seven interoffice memoranda" could not have actually been prepared before 1949.  *Id.* at 641.  When faced with this evidence, plaintiff "denied that he had represented that the questioned documents were the true documents prepared in 1947, but said . . .  he meant only that the contents of the questioned memoranda were the same as those of the true documents."  *Id.* at 642.  The court was thus "face to face with the question of whether fraud was practiced in the presentation of [plaintiff's] claim" that the contents of the questioned memoranda were the same as those of the true documents.  *Id.*  The court noted "[o]rdinarily fraud can only be established from circumstances," which "must be clear and convincing."  *Id.*  The court made the following factual findings: (1) "plaintiff had [n]ever referred to any of the questioned documents until after [the government] had advised plaintiff's attorney on September 15, 1948;" (2) "in his letter of September 22, 1949, [plaintiff] made the unqualified statement that he was transmitting photostatic copies of four of the memoranda of 1947 that he had located in his files;" and (3) "[a]fter it had been established beyond any question that . . . the seven interoffice memoranda . . . were prepared in 1949, plaintiff offered no evidence in explanation of its inability to produce any one of these 14 documents which it says were prepared in 1947."  *Id.* at 642–43.  Based on these findings, the court "[found] it altogether strange that if plaintiff located and had copies made of the true documents, it was unable to produce a witness who prepared or saw any of the 1947 documents, or who made any of the copies which the evidence shows without dispute to have been prepared in 1949."  *Id.* at 644.  Moreover, the court had "pointed out a number of other circumstances from which we must conclude that the questioned documents are inconsistent with and contrary to the established facts."  *Id.*  Accordingly, the court "reluctantly . . . [found] that fraud was practiced in the presence of [plaintiff's] claim" that the contents of the questioned memoranda were the same as those of the true documents.  *Id.* at 645. The government's special plea of fraud was therefore sustained, and the claim forfeited.  *Id.*

This Court, based on the record, must therefore draw a reasonable inference regarding plaintiff's intent in considering these documents in the light most favorable to plaintiff. In *Heger*, the court inferred the intent of Mr. Heger to defraud the government from the record because two documents in the record (the false statement that Mr. Heger was unemployed and the documentation which showed he was employed) showed "explicitly and convincingly that Mr. Heger has attempted to mislead the court to further his quest to avoid paying taxes." 112 Fed. Cl. at 230. Such "explicit[] and convincing[]" evidence does not appear in the record before the Court here. *Id.* The government attempts to point to the 2009 Assignment as such evidence, and the 2017 Notarized Statement as the "false proof." Tr. at 18:10–12, 42:5–7. The government argues plaintiff submitted the 2009 Assignment and 2017 Notarized Statement with the intent to "demonstrate standing to recover on his claims on this case." MSJ on Countercl. at 12.

Plaintiff's counsel represented at oral argument the 2009 Assignment was believed to be authentic under the incorrect belief that *nunc pro tunc* assignments can occur. Tr. at 24:7–22. Plaintiff also argues the 2009 Assignment was authentic in his *pro se* reply. Resp. to MSJ on Countercl. at 2–3. Plaintiff argues "I think what we've got is a set of documents that are confusing, but not fraud." Tr. at 21:25–22:5 ("[P]ro se plaintiffs do a lot of things on their own and they can create a lot of confusion . . . at the end of the day with all of the inferences drawn in our favor, I think what we've got is a set of documents that are confusing, but not fraud."); *see also id.* at 37:5–7 ("Obviously a lot of confusion resulted from [The 2009 Assignment], but . . . I don't think this is fraud."); *id.* at 37:14–16 ("Mr. Haddad drafted things when standing alone are confusing, but I don't think they're fraud."); *id.* at 35:16–20 ("[Mr. Haddad] executed a second document to confirm, in fact, that he had returned rights to himself and created a preamble that had these statements in it that I think are inartful, but I don't think are fraud.").

The government fails to offer sufficient facts, as those proffered by defendants in *Heger,* to show "explicitly and convincingly that [plaintiff] has attempted to mislead the Court" to further plaintiff's argument. *Heger,* 112 Fed. Cl. at 230. Both plaintiff's counsel and plaintiff, when acting pro se, manifest the 2009 Assignment was executed by plaintiff under a mistaken belief of law, but not with the intent to defraud the court or the government. *See* Resp. to MSJ on Countercl. at 2–3 and Tr. at 21:25–22:5. Drawing all inferences in plaintiff's favor, the government is unable to show, by clear and convincing evidence, plaintiff, when proceeding *pro se*, intended to mislead the government in the submission of the 2009 Assignment and 2017 Agreement. A "genuine issue as to [a] material fact" related to the government's counterclaim therefore exists, and the government's motion for summary judgment pursuant to the counterclaim under 28 U.S.C. § 2514 must be denied. *Celotex*, 477 U.S. at 322 (stating there can be no genuine dispute as to any material fact for a court to rule in favor of a motion for summary judgment).

## IV. Plaintiff's Motion for Reconsideration of the February 28, 2018 Order Granting the Government's Motion for Partial Dismissal

### A. Legal Standard for Motion for Reconsideration

RCFC 59(a)(1) provides the Court may grant a motion for reconsideration: "(A) for any reason for which a new trial has heretofore been granted in an action at law in federal court; [or]

(B) for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." Motions for reconsideration "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (quoting 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2810.1 at 127–28 (2d ed. 1995)). "Motions for reconsideration must be supported 'by a showing of extraordinary circumstances which justify relief.'" *Caldwell v. United States*, 391 F.3d 1226, 1235 (Fed. Cir. 2004) (quoting *Fru-Con Constr. Corp. v. United States*, 44 Fed. Cl. 298, 300 (1999), *aff'd*, 250 F.3d 762 (Fed. Cir. 2000) (per curiam)).

"Under [RCFC] 59(a)(1), a court, in its discretion, 'may grant a motion for reconsideration when there has been an intervening change in the controlling law, newly discovered evidence, or a need to correct clear factual or legal error or prevent manifest injustice.'" *Biery v. United States*, 818 F.3d 704, 711 (Fed. Cir. 2016) (quoting *Young v. United States*, 94 Fed. Cl. 671, 674 (2010)). "Manifest, as in manifest injustice, is defined as clearly apparent or obvious," and a party "seek[ing] reconsideration on the ground of manifest injustice . . . cannot prevail unless it demonstrates that any injustice is apparent to the point of being almost indisputable." *Lucier v. United States*, 138 Fed. Cl. 793, 799 (internal citations and quotation marks omitted).

### B.    Parties' Arguments

Plaintiff presents three fundamental arguments in support of its motion for reconsideration of the court's 28 February 2018 order. First, plaintiff argues "Mr. Haddad's claims against the United States arose in 2012 at the latest . . . and thus should not have been dismissed as having been assigned to non-party Astornet in January, 2014." Mot. for Recons. at 1. Plaintiff supports this by stating "[government's prior counsel] implicitly conceded [plaintiff had a claim in 2012] by failing to dismiss [the earlier] claim as many years premature" and instead "mov[ed] to have it dismissed for lack of jurisdiction." *Id.* at 2–3. Plaintiff characterizes the government's current position in this case as "inconsistent" with that taken in *Haddad 2012*, which was ultimately dismissed pursuant to 28 U.S.C. § 1500. *Id.* at 3.

Second, plaintiff seeks to invoke the Assignment of Claims Act to void any previous assignments of the '844 patent from Mr. Haddad to Astornet, or vice versa. Mot. for Recons. at 8. Plaintiff argues the Assignment of Claims Act operates in the following way:

THE COURT: Is that how the Assignment of Claims Act works?

MR. MASON: Yeah. My understanding is that when you have a claim against the Government, that you are not allowed to assign it, unless under a certain condition, which is actually if the claim is allowed, the claim isn't decided, and they weren't apparent when the clam was issued. So Mr. Haddad had actually brought suit, adding that Mr. Haddad had won a suit here in the Court of Claims and been issued a judgment, at that point he could assign whatever he wanted, as opposed to those conditions being true at the time. At the time he had a potential claim for infringement, but not an issued warrant

on the side of the Court.  And so therefore under 3727, it could not be assigned back
when it was not assigned out in the first place.

Tr. at 47:18–48:8.  Plaintiff argues "the Assignment of Claims Act would have barred both Mr.
Haddad's 2014 assignment to Astornet as well as his assignment back in which case Mr. Haddad
has in fact always had possession of these claims."  Mot. for Recons. at 3.  Plaintiff argues
because he had valid claims against the government in 2012, both his 2014 assignment to
Astornet and Astornet's 2016 assignment back to plaintiff "[were] ineffective given the
Assignment of Claims Act" barred such assignments.  *Id.*  Plaintiff notes "Mr. Haddad's
assignments . . . *do* satisfy the Act on its plain language and so while the Act's purposes are
surely important to issues where plain language is ambiguous, they do nothing to undermine
plaintiff's position that neither of Mr. Haddad's assignments should be given force or effect
against the United States."  Reply in Supp. of Mot. for Recons. at 7.  Plaintiff asserts:

> [T]he assignment was effective and we were allowed to proceed in a lawsuit against
> private parties, but the portion of the assignment that covered the actual claims against
> the United States Government, which is what we're pursuing here and are the only things
> left in this case, it was ineffective as to that.  We were not allowed to assign those claims.
> It's really hard to assign both things, private claims as well as claims against the
> Government.

Tr. at 50:24–51:7.  Plaintiff argues his understanding of the Assignment of the Claims Act is
based solely on the plain language of the act and offers no case law to support this position.  *See*
Tr. at 48:12–13.

   Finally, plaintiff argues the government induced infringement of various government
contractors pursuant to 35 U.S.C. § 271, and plaintiff further argues this inducement of
infringement provides an alternative start date on which the government's infringement allegedly
began:  as early as 2011.  Reply in Supp. of Mot. for Recons. at 2.  Plaintiff states the
government infringed the '844 patent prior to 2012 by actively inducing third parties as defined
in 35 U.S.C. § 271(a) and (b).  Mot. for Recons. at 6.  Specifically, plaintiff claims the following
affirmative acts constitute inducement by the TSA:  "(1) enter[ing] into three contracts for
delivery of CAT/BPSS systems on September 30, 2011"; and "(2) conduct[ing] pilot tests of
these systems in three different airports in early 2012."  Reply in Supp. of Mot. for Recons. at 2
(internal quotation marks omitted).  Plaintiff further argues the government waived sovereign
immunity in this case because "the Federal Circuit [] completely up-ended [and expanded] the
careful waiver of sovereign immunity that *Zoltek* and *Decca* were based on" by holding "all
agencies entering into any contracts immunize all conduct of government contractors without
any reference to authorization or consent."  Reply in Supp. of Mot. for Recons. at 5 (citing
*Astornet Techs. Inc. v. BAE Systems, Inc.*, 802 F.3d 1271, 1278 (Fed Cir. 2015)).

   According to the government, plaintiff's motion under RCFC 54(b) fails to meet any of
the three possible alternative showings required under this rule:  "(1) the occurrence of an
intervening change in the controlling law; (2) the availability of previously unavailable evidence;
or (3) the necessity of allowing the motion to prevent manifest injustice."  Gov's Response to
Mot. for Recons. at 7 (quoting *Webster v. United States*, 93 Fed. Cl. 676, 679 (2010)).  In

response to plaintiff's argument his claim arose on or before 2012, the government rejects plaintiff's assertion that by "seeking to dismiss the 2012 CFC complaint on jurisdictional grounds, Defendant somehow waived its right to raise jurisdictional and substantive defenses in the present case." *Id*. at 8.

The government further argues plaintiff's interpretation of the Assignment of Claims Act is incorrect, stating "[p]laintiff's argument [regarding the ACA] is contrary to decades of law interpreting the Assignment of Claims Act." *Id*. at 11 (internal citations omitted). The government notes "[t]he purpose of the Act is not to invalidate any contractual rights or equities as between the private parties to an assignment that does not satisfy the Act." *Id*. at 10 (citing *Martin v. Nat'l Sur. Co.*, 300 U.S. 588, 596–97 (1937)). Rather, the Assignment of Claims Act is "'intended for the protection of the government.'" *Id*. (quoting *Delmarva Power & Light Co. v. United States*, 79 Fed. Cl. 205, 214–15 (2007)).

Lastly, the government argues plaintiff misapprehends the applicability of 35 U.S.C. § 271 to the case at hand, noting "the Federal Circuit in *Astornet* was discussing [a] private party" when it discussed this statute and the government's waiver of sovereign immunity thereby fails to extend to cases of alleged induced patent infringement. *Id*. at 11–12. The government did not respond to plaintiff's argument regarding *Astornet* overruling *Zoltek* and *Decca* in a brief because it was brought up only in plaintiff's reply. At oral argument the government argued "the Court of Appeals for the Federal Circuit in the *Astornet* appeal explained that § 1498 was the proper statute . . . for Astornet to bring its claims of infringement against the Government . . . ." Tr. at 59:4–7.

### C.   Analysis of Reconsideration Claims

### 1.   The Government's Inconsistent Positions

To establish his claims arose in 2012, plaintiff points to the government's previous position in *Haddad 2012*.[11] Mot. for Recons. at 3. Plaintiff alleges the government implicitly conceded the existence of the claims by "not . . . mov[ing] to dismiss [the] . . . premature suit" and instead "moving to have [the complaint] dismissed for lack of jurisdiction under 28 U.S.C. § 1500." *Id*. at 2–3. Plaintiff cites no authority supporting this argument, relying merely on an implication from the government's previous actions. Tr. at 48:9–13. Plaintiff thus poses the following question in the abstract: "was [the government] wrong not to move to dismiss for premature suit or is the [government] wrong today?" Mot. for Recons. At 3. Implicit in plaintiff's argument is the position the government has to choose between presenting any defense on the merits and arguing jurisdiction. *See id.*

A motion to dismiss a suit for lack of jurisdiction under 28 U.S.C. § 1500 is based on a lack of subject-matter jurisdiction. *See Cent. Pines Land Co., L.L.C. v. United States*, 697 F.3d

---

[11] Although plaintiff's counsel clarified at oral argument plaintiff was not making a "waiver argument" regarding whether the government waived substantive arguments by pursuing a dismissal under Section 1500 in the 2012 Case, the Court nonetheless will address the claim since it arises in the Plaintiff's Motion for Reconsideration. *See* Tr. at 62:17–21; Mot. for Recons. at 2–3.

1360, 1362 (Fed. Cir. 2012) (indicating that a decision based on § 1500 is brought through a motion to dismiss for lack of subject-matter jurisdiction). A review of *Haddad II* provides helpful context regarding the disposal of threshold jurisdictional matters in cases before this Court. In *Haddad II*, this court noted "[a]s a threshold matter, the court must consider jurisdiction before reaching the substantive merits of a case." *Haddad II*, 136 Fed. Cl. at 577 (citing *Gonalez v. Thaler*, 565 U.S. 134, 141 (2012)). The citation in *Haddad II* to *Gonzalez v. Thaler* provides an important foundational principle regarding subject-matter jurisdiction: "When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented." *Gonzalez*, 565 U.S. at 141.

In *Janicki Logging Co. v. United States*, another judge on this court concluded if a motion to dismiss for lack of jurisdiction under § 1500 is granted, an issue is not precluded in future litigation so long as the grant of dismissal did not make a determination on the specific issue which was "necessary and essential to the resulting judgement." *Janicki Logging Co. v. United States,* 36 Fed. Cl. 338, 341 (1996), *aff'd,* 124 F.3d 226 (Fed. Cir. 1997) (denying defendant's motion to dismiss based on issue preclusion because "the trial court's determinations with respect to the statute of limitations and the viability of a Fifth Amendment takings claim were not 'necessary and essential to the resulting judgment'"). In *Haddad 2012*, this court did not determine whether plaintiff's claims had merit, because the court could not reach the substantive merits of the case without considering the jurisdictional issue. *Haddad II*, 136 Fed. Cl. at 577; *see also Haddad 2012*, No. 12-165. Instead, this court solely dismissed plaintiff's claims due to lack of jurisdiction under § 1500 because Mr. Haddad had cases pending in both District Court and this Court. *See, Haddad 2012*, No. 12-165 (order dismissing pursuant to 28 U.S.C. §1500).

Under plaintiff's theory, were the Court to raise an issue of subject-matter jurisdiction *sua sponte* and dismiss the case, and were the plaintiff to later cure such jurisdictional deficiencies and bring the case forward anew, the government would be required to waive any potential defenses on the merits of the action not raised prior to the Court's *sua sponte* dismissal— this is not the law. The government's position in this case is not inconsistent with its position in *Haddad 2012*, where the only action the government took was seeking dismissal of the case based on this court's lack of subject-matter jurisdiction. *See Haddad 2012*, No. 12-165C (order dismissing pursuant to 28 U.S.C. §1500). Arguing for dismissal on procedural or jurisdictional deficiencies does not result in any subsequent waiver of substantive arguments. *See Janicki Logging Co.*, 35 Fed. Cl. at 341, *aff'd,* 124 F.3d 226 (Fed. Cir. 1997); *see also* RCFC 12(h) (delineating the limited defenses a party waives by failing to raise prior to trial).

## 2. The Assignment of Claims Act

Next, the Court must determine whether plaintiff's interpretation of the Assignment of Claims Act, 31 U.S.C. § 3727(b), supports invalidation of all previous agreements and transfers of ownership between Mr. Haddad and Astornet. Plaintiff attempts to show "the Court erred in dismissing these claims" because the assignments "satisfy the Act on its plain language" which "bar[red] Mr. Haddad's January, 2014 assignment to Astornet of his claims against the United States." Mot. for Recons. at 3; Reply in Supp. of Mot. for Recons. at 7. The government argues plaintiff's interpretation of the Assignment of Claims Act is unsupported and goes against

decades of judicial interpretation of the Act itself, in addition to the well-understood purpose of the Act. *See* Gov's Resp. to Mot. for Recons. at 10–11.

Specific to the jurisdiction of this Court, the Assignment of Claims Act governs the "transfer or assignment of any part of a claim against the United States Government or of an interest in the claim . . . ." 31 U.S.C. § 3727(a)(1). "An assignment may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued." 31 U.S.C. 3727(b). As another judge on this court has noted, "[a]ssignments of patent rights are subject to the Assignment of Claims Act, and voluntary assignments of patent claims are ineffective against the government unless they qualify for one of the[] judicially-recognized exceptions or otherwise do not run afoul of the purposes of the Act." *3rd Eye Surveillance, LLC v. United States*, 133 Fed. Cl. 273, 277 (2017). "Plaintiffs are the original claimants only for infringement claims that arose after the patents [are] assigned to [plaintiffs]." *Id.* at 278.

The Assignment of Claims Act does not void agreements between private parties in the event an attempted assignment violates the Act. *Id.* at 277; 31 U.S.C. § 3727(a)(1). Rather, "voluntary assignment of patent claims are ineffective *against the government* . . . ." *3rd Eye Surveillance*, 133 Fed. Cl. at 277 (emphasis added). Plaintiff does not point to any Federal Circuit or Court of Federal Claims case where the Assignment of Claims Act was used to invalidate assignments between two private parties retroactively. *See* Tr. at 52:17–55:8. Rather, plaintiff argues "the Assignment of Claims Act would have barred both Mr. Haddad's 2014 assignment to Astornet as well as his assignment back in which case Mr. Haddad has in fact always had possession of these claims . . . ." Mot. for Recons. at 3. Assuming the existence of assignments between Mr. Haddad and Astornet, the Assignment of Claims Act does not operate to void these assignments. All the Assignment of Claims Act does is render these assignments unable to transfer between the parties a right to sue the government for past-accrued infringement. 31 U.S.C. § 3727(a)(1); *3rd Eye Surveillance*, 133 Fed. Cl. at 277.

To the extent plaintiff attempts to make a policy argument as to how the Assignment of Claims Act *should* be applied, the Supreme Court has weighed in on this issue on multiple occasions. According to the Supreme Court, "the statute must be interpreted in the light of its purpose to give protection to the Government." *Martin v. Nat'l Sur. Co.*, 300 U.S. 588, 596 (1937). The Supreme Court further noted the primary purpose of the Assignment of Claims Act as follows:

> [U]ndoubtedly to prevent persons of influence from buying up claims against the United States, which might then be improperly urged upon officers of the Government, and . . . to prevent possible multiple payment of claims, to make unnecessary the investigation of alleged assignments, and to enable the Government to deal only with the original claimant. Other courts have identified a third purpose of the ACA, namely, to save to the United States defenses which it has to claims by an assignor by way of set-off, counter claim, etc., which might not be applicable to an assignee.

*United States v. Shannon*, 342 U.S. 288, 291–92 (1952) (internal quotation marks and footnote omitted) (quoting *United States v. Aetna Cas. & Sur. Co.*, 338 U.S. 366, 373 (1949)) (reversing a

decision by the Court of Appeals for the Fourth Circuit because "[the Fourth Circuit's] judgment is based entirely on the assignment [of a claim against the United States for property damage]"). In view of the Supreme Court's guidance, the purpose of the Assignment of Claims Act was never to void entire assignments between private parties; it was to protect the government from unwieldy plaintiffs "buying up claims against the United States." *Id.* Insofar as plaintiff's motion relies on a novel interpretation of the Assignment of Claims Act, plaintiff has provided no authority to support such an argument. The Assignment of Claims Act does not function to retroactively void previous assignments between private parties. *Shannon*, 342 U.S. at 291–92; 31 U.S.C. § 3727(a)(1).

### 3.    The Date Plaintiff's Claims Arose

Plaintiff claims the court's 28 February 2018 order improperly "dismissed all of [plaintiff's] infringement claims from 2014 to 2016 on the grounds that [plaintiff] lacked standing to bring them given his assignment of his claims against the United States to Astornet in January 2014." Mot. for Recons. at 2–3. According to plaintiff, his "claims against the United States arose in 2012 at the latest . . . and thus should not have been dismissed as having been assigned to non-party Astornet in January, 2014." *Id*. at 1.

Plaintiff argues in his motion for reconsideration the Court specifically erred in finding infringement occurred when the United States "order[ed] and [took] delivery" of the allegedly infringing products, as since at least 2012 "the TSA and the United States had in fact been taking 'affirmative act[s] to encourage infringement with the knowledge that the induced acts constitute patent infringement . . . .'" Mot. for Recons. at 5. Plaintiff further speculates his claims may have arisen as early as 2011, when the TSA solicited contracts "that ultimately led to the 2013 contracts and the 2014 orders and deliveries." *Id*. The government's actions allegedly indicate plaintiff's "claims arose no later than 2012 based on the United States' inducement of three government contractors to infringe his patents . . . ." *Id*. at 6. At oral argument, plaintiff's counsel argued instead it was the government responsible for direct infringement, and third-party defendants induced the infringement:

> "[A]t least in terms of recovering against the United States, we don't have to make inducement allegation[s]. But as to the conduct of BAE and NCR, of course, their conduct is an inducement type conduct and that's what we said here as well."

Tr. at 61:11–15.

At oral argument, the parties disputed whether the Federal Circuit's decision in *Astornet Techs. Inc. v. BAE Systems, Inc.*, 802 F.3d 1271 (Fed Cir. 2015) ("*Astornet*") directs "35 U.S.C. 271(b) claims or (c) claims should be brought . . . in the Court of Federal Claims." Tr. at 59:20–22. Plaintiff further argued at oral argument the *Astornet* decision should be understood as instructing "that authorization and consent [do not] matter anymore, and that such claims, as long as they involve government contractors, need to be brought [in the Court of Federal Claims]." *Id*. at 61:2–5. The Court need not address the legal question of whether *Astornet* negated considerations of authorization and consent, or the factual question of whether plaintiff's claims against the United States arose in 2011, 2012 or 2014, however, because this Court has already

previously dismissed *all* patent infringement claims "arising prior to October 27, 2016 under the '844 patent."[12] *Haddad II*, 136 Fed. Cl. at 584.

Plaintiff asserts a showing "that his claims arose in 2012" would "therefore bar[] both his original assignment of rights to Astornet as well as his later attempted assignment back." Reply in Supp. of Mot. for Recons. at 4. This is because, according to plaintiff, his "claims could not be assigned after they arose in 2012 by virtue of the Assignment of Claims Act, 31 U.S.C. § 3727(b), which rendered ineffective all of his assignments after 2012, including his 2014 assignment and his later re-assignment." *Id*. at 1. The Court has already noted the Assignment of Claims Act does not function to retroactively void previous assignments between private parties. *See Supra* at Section IV(C)(2).

The Court's 28 February 2018 Order ruled plaintiff failed to meet his burden to establish this Court's jurisdiction under 28 U.S.C. § 1498(a) on *any* claim arising prior to 27 October 2016. *Haddad II*, 136 Fed. Cl. at 584. The Order notes "[t]he record reflects that . . . at *some* point" plaintiff transferred the right to sue for patent infringement under the '844 Patent to Astornet, and the specific point in time "when Plaintiff made that transfer is dispositive of whether the claims of infringement at issue in this case are barred by the Assignment of Claims Act." *Id*. at 582 (emphasis added). The only evidence plaintiff offered the Court to establish the date when he transferred the right to sue for patent infringement under the '844 Patent was the 2009 Assignment letter, which the Court previously determined "does not meet the requirements of [Federal Rule of Evidence] 901(a)" and therefore did not consider. *Id*. at 583 ("Other than the Licensing Letter . . . [p]laintiff has proffered no evidence establishing the date when he transferred the right to sue for patent infringement under the '844 Patent to Astornet."). Even assuming in the alternative the 2009 Assignment letter satisfied the requirements of Federal Rule of Evidence 901(a), the Court previously concluded the letter "transferred the right to 'legally pursue infringers of the ['844 P]atent in relation to [the] CAT/BPSS opportunity' to Astornet as of May 1, 2009 . . . [and t]his right to sue for patent infringement did not revert to [p]laintiff until October 27, 2016, when Astornet executed the Return Agreement." *Id*. at 584 ("[A]ny right to sue for infringement arising between May 1, 2009 and October 27, 2016 resided solely in Astornet.").

---

[12] To the extent plaintiff now argues the Federal Circuit's 2015 *Astornet* decision should be used to reconsider this Court's 2018 ruling, he may not use a motion for reconsideration to "reassert the same arguments they made in earlier proceedings . . . [or] raise new arguments that could have been made earlier." *Lee v. United States*, 130 Fed. Cl. 243, 252 (2017), *aff'd*, 895 F.3d 1363 (Fed. Cir. 2018) (internal citations omitted) (denying plaintiffs' motion for reconsideration of an order granting the government's motion to dismiss the case). The Court's 2018 order did not rely on *Astornet* to conclude plaintiff failed to meet his burden of proving this Court's jurisdiction over claims related to the '844 patent arising prior to October 27, 2016, and plaintiff did not cite the Federal Circuit's *Astornet* decision in his briefing on the government's motion to dismiss. *See generally Haddad II*, 136 Fed. Cl. 572; Reply to Def. Mot. for Partial Dismissal, ECF No. 27; Reply to Def. Mot. for Partial Dismissal In Supp. of Pl. Mot. to Dismiss Def. Patial[sic] Dismissal Mot., ECF No. 29; Reply to Court Mem. Opinion and Show Cause Order, ECF No. 32; Reply to Def. Supp. Brief in Supp. of its Motionfor[sic] Partial Dismissal U8nder[sic] RCFC 12(b)(1) and RCFC 12(b)(6), ECF No. 35. Plaintiff therefore cannot "raise new arguments that could have been made earlier" related to the Federal Circuit's decision in *Astornet* at the motion for reconsideration stage. *Lee*, 130 Fed. Cl. at 252.

Plaintiff does not argue there has been an intervening change in controlling law or newly discovered evidence warranting the Court's reconsideration of it 28 February 2018 order.  *See generally* Mot. for Recons.  Therefore, plaintiff's arguments related to the date his claims accrued against the government would warrant reconsideration only if they show "a need to correct clear factual or legal error or prevent manifest injustice."  *Biery v. United States*, 818 F.3d 704, 711 (Fed. Cir. 2016) (internal quotation marks omitted).  To prevail on a motion for reconsideration on the ground of manifest injustice, plaintiff must "demonstrate[] that any injustice is apparent to the point of being almost indisputable."  *Lucier v. United States*, 138 Fed. Cl. 793, 799 (internal citations and quotation marks omitted).  Even if plaintiff is correct his claims against the United States arose in 2011 or 2012 instead of 2014, this fact would not negate the 28 February 2018 Order's underlying conclusion that plaintiff failed to meet the burden to establish this Court's jurisdiction over any infringement claim related to the '844 Patent arising between 1 May, 2009 and 27 October, 2016.  *Haddad* II, 136 Fed. Cl. at 584.  Plaintiff has not shown how the government's alleged infringement occurring in 2011 or 2012 instead of 2014, if true, results in an injustice "apparent to the point of being almost indisputable" in the Court's 28 February 2018 Order.  *Lucier*, 138 Fed. Cl. at 799; *see also Biery v. United States*, 818 F.3d 704, 711 (Fed. Cir. 2016) (internal quotation marks and citations omitted) ("Under [RCFC] 59(a)(1) a court, in its discretion, may grant a motion for reconsideration when there has been an intervening change in the controlling law, newly discovered evidence, or a need to correct clear factual or legal error or prevent manifest injustice.").  Plaintiff, therefore, cannot rely on this argument as grounds for reconsideration of the Court's order.

### 4.    Conclusion Regarding Plaintiff's Motion for Reconsideration

"[A] court, in its discretion, 'may grant a motion for reconsideration when there has been an intervening change in the controlling law, newly discovered evidence, or a need to correct clear factual or legal error or prevent manifest injustice.'"  *Biery*, 818 F.3d at 711 (quoting *Young*, 94 Fed. Cl. at 674).  Plaintiff does not allege "there has been an intervening change in the controlling law [or] newly discovered evidence" that warrants reconsideration of this Court's 28 February 2018 order.  *See generally* Mot. for Recons.  Plaintiff's arguments focus on whether there is "a need to correct clear factual or legal error or prevent manifest injustice."  *Id.*  As discussed *supra,* the government did not waive any substantive argument by moving to dismiss plaintiff's claim for lack of jurisdiction under 28 U.S.C. § 1500.  *See Janicki Logging Co.*, 35 Fed. Cl. at 341.  The Assignment of Claims Act does not function to retroactively void previous agreements and transfers of ownership between Mr. Haddad and Astornet.  *See Shannon*, 342 U.S. at 291–92; 31 U.S.C. § 3727(a)(1).  Plaintiff's contention his claims arose in 2011 or 2012, instead of 2014, does not negate the grounds for the Court's 28 February 2018 ruling dismissing all patent infringement claims "arising prior to October 27, 2016 under the '844 patent." *Haddad II*, 136 Fed. Cl. at 584.   Accordingly, none of plaintiff's arguments meet any of the three possible alternative showings required under RCFC 54(b) for the Court to grant a motion for reconsideration.

## V.    Conclusion

As an issue of fact exists as to whether plaintiff intended to commit fraud on the government with his submission of the 2017 Notarized Statement, the government's motion for summary judgment on the counterclaim is **DENIED**.  Further, none of plaintiff's arguments meet any of the three possible alternative showings required under RCFC 54(b) for the Court to grant a motion for reconsideration.  Plaintiff's motion for reconsideration of the 28 February 2018 order is **DENIED**.

Plaintiff's Cross Motion for Summary judgment (ECF No. 67) is **DENIED** as moot, as the docketing of ECF No. 67 as a cross-motion for summary judgment was done in error.  Idemia and Trans' motions for summary judgment on the issues of patent invalidity (ECF No. 63) and non-infringement (ECF No. 88) hereby remain **STAYED** pending the parties' proposed further proceedings**.**

The parties shall meet and confer on further proceedings for this case in view of the Court's Order.  The parties shall then file a joint status report on or before 2 February 2021**.**  The joint status report will summarize the parties' respective positions regarding:  (1) a proposed discovery schedule; (2) whether the parties have claim construction disputes; and (3) a proposed schedule for claim construction briefing if the parties have claim construction disputes.  If the parties propose a schedule for claim construction briefing, the Court encourages the parties to contemplate a schedule similar to that of Judge Albright in the United States District Court, Western District of Texas (Order Governing Proceedings – Patent Cases, current version as of 2 February 2021)  As agreed by counsel for the parties during the 4 September 2020 oral argument, the Court will schedule a status conference to discuss further proceedings after reviewing the parties' respective positions in the joint status report.

**IT IS SO ORDERED.**

s/ Ryan Holte
Ryan T. Holte
Judge